219 N.J. Super. 134 (1987)
529 A.2d 1063
JAMES DALLMEYER, PLAINTIFF,
v.
LACEY TOWNSHIP BOARD OF ADJUSTMENT, DEFENDANT.
Superior Court of New Jersey, Law Division Ocean County.
April 15, 1987.[*]
*137 Lawrence Silver, for plaintiff.
James N. Citta, for defendant (Citta, Holzapfel, Citta & Millard, attorneys).

OPINION
SERPENTELLI, A.J.S.C.
This case represents one of the growing number of prerogative writs actions involving so-called isolated lots. In the typical scenario such lots have been rendered undersized by the upgrading of zoning requirements. No adjacent property is available to bring the lot into conformity with the ordinance. At one time, the value of these lots did not justify the investment involved in pursuing the required variances or engaging in the appeals so frequently necessitated by local resistance to such requests. However, as real estate values escalated pricing conforming parcels beyond the reach of many buyers, these formerly unwanted lots have taken on a new value. It has become worthwhile to apply for a variance.
Because there are so many lots of this type and local officials frequently perceive approval of these variance requests as downgrading the community, this court is constantly and increasingly being faced with appeals from denials of such applications. Despite even the best efforts of the board attorneys and a long line of Supreme Court decisions, zoning boards continue to insist that they are without adequate guidance concerning the applicant's burden of proof, the applicant's right to some effective use of the property and the board's obligation *138 to participate in the resolution of this special type of case. The purpose of this opinion is to provide guidance in this case and the many like it as to how these matters should be presented to the zoning board, how the board should evaluate the proofs, what the extent of the board's obligation is to explore the facts on its own and finally, what the limits are on the board's right to deny such applications.
Plaintiff, James Dallmeyer, is the contract purchaser of land in Lacey Township. The property is located in an R-75 zone, which requires a lot area of 7,500 square feet and a lot width of 75 feet. The lot is nonconforming because it has a lot area of 5,000 square feet and a width of 50 feet. Plaintiff made application to the defendant for a variance pursuant to N.J.S.A. 40:55D-70(c)(1) to construct a single family residence. The proposed house would comply with all side yard and set back requirements. The lots on either side of plaintiff's lot are conforming but a conveyance of any portion of them to the plaintiff would render them nonconforming.
Following a hearing on plaintiff's application the Board voted to deny the variance. In its memoralizing resolution, the Board found that the failure to grant the requested variance would not create an undue hardship and that the relief requested could not be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and the zoning ordinance. Plaintiff instituted this action seeking a reversal of the Board's decision.
This court's role in reviewing determinations of local planning or zoning boards is clearly defined by case law. Such boards are independent administrative bodies acting in a quasi-judicial manner. Dolan v. DeCapua, 16 N.J. 599, 612 (1954). Their powers stem directly from statutory authority. Duffcon Concrete Products, Inc. v. Cresskill Bor., 1 N.J. 509, 515-16 (1949). Accordingly, a trial court must view the board's actions as being presumptively correct. Rexon v. Haddonfield Bd. of Adj., 10 N.J. 1 (1952). Because of their peculiar knowledge of *139 local conditions, they must be allowed wide latitude in their delegated discretion. Ward v. Scott, 16 N.J. 16, 23 (1954). The burden of proof rests with the challenging party and the standard of review is whether or not the decision can be found to be arbitrary, capricious or unreasonable. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268 (1965). That decision must be made on the basis of what was before the board not on the basis of a trial de novo. To receive a variance under N.J.S.A. 40:55D-70(c)(1), an applicant must satisfy two criteria. First it must be shown that exceptional or undue hardship will result if the variance is not granted, the positive criteria. Additionally, it must be shown that the variance will not result in a substantial detriment to the public good or the zoning plan, the negative criteria.
Our Supreme Court has addressed, in a long line of decisions, the problems that are encountered in an isolated lot case. Harrington Glen, Inc. v. Leonia Bd. of Adj., 52 N.J. 22 (1968); Gougeon v. Stone Harbor Bor., 52 N.J. 212 (1968) (Gougeon I); Gougeon v. Stone Harbor Bd. of Adj., 54 N.J. 138 (1969) (Gougeon II); Chirichello v. Monmouth Beach Zoning Bd. Adj., 78 N.J. 544 (1979); Commons v. Westwood Zoning Bd., 81 N.J. 597 (1980); Nash v. Morris Bd. of Adj., 96 N.J. 97 (1984). These cases establish that the efforts the property owner has made to bring the property into compliance with the zoning ordinance either by sale of the property to an adjacent owner or by acquisition of property from an adjacent owner should be considered when evaluating undue hardship. If it is feasible to purchase property from an adjoining owner, or if the owner of the undersized lot refuses to sell the property to an adjoining owner at a "fair and reasonable" price, the owner might not suffer an "undue hardship". Gougeon I, 52 N.J. at 224. Conversely, if the adjacent property is not available or the applicant is willing to sell at a "fair and reasonable" price and an adjoining property owner refuses to make a reasonable offer, then "undue hardship" generally exists. Commons, 81 N.J. at 606. The Court in Nash determined that *140 "the proper standard of valuation in deciding the fair price to be offered to an owner to avoid hardship under N.J.S.A. 40:55D-70(c) is the fair market value of the property assuming that all necessary variances have been granted." 96 N.J. at 107. It is to be emphasized that the availability or unavailability of adjacent property or the willingness or unwillingness of the owner to buy or sell are factors the board must consider. They are not necessarily controlling. Gougeon I, 52 N.J. at 224; Gougeon II, 54 N.J. at 148-49.[1]
In this case the Board gives two reasons to support its finding that undue hardship does not exist. It asserts that "[t]here is not sufficient evidence to show that a substantial good faith effort was made to contact one of the adjoining owners in the effort to sell them the subject property." However, the record demonstrates that the plaintiff's real estate agent contacted the adjoining property owners by certified mail on two occasions prior to the hearing. The agent advised the owners that they may purchase the subject property. He received no response to these inquiries. Additionally, plaintiff again offered the lot to an objector who appeared at the hearing.
The other reason the Board gives for finding that undue hardship does not exist is that "[t]he hardship is in fact self-created by the owner." Apparently, the Board believed that one who buys an undersized lot creates a hardship. However, it has long been established that if neither the person who owned the lot when the zoning ordinance making it undersized *141 was adopted nor a subsequent owner did anything to create the condition for which the variance is sought, a right to relief possessed by the original owner passes to the successor in title. Wilson v. Mountainside Bor., 42 N.J. 426, 452-53 (1964). That right is not lost simply because the succeeding owner bought or contracted to buy with knowledge of the lot size restriction. Harrington Glen, Inc., 52 N.J. at 28. Thus, neither of the two findings can be supported by the evidence that the Board had before it.
With respect to the negative criteria, the Board's resolution finds:
(A) There are no dwellings on undersized lots in the area.
(B) A lot of the size of the subject property is too small to permit development which would [be] compatible with the neighborhood and the zone plan and scheme.
(C) Construction of a home on the lot the size of the subject property would be detrimental to the area and its property values.
This type of case is not exempt from the requirement that the applicant must also carry the burden of proof with regard to the negative criteria. However, if the Board decides that the variance cannot be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan and ordinance, it has the obligation to make a full and complete statement of the factual findings on which the conclusion is based. The importance of compliance with this requirement is heightened when denial may equate to a taking. Thus, the adequacy of the findings listed above must be closely scrutinized.
Generally, where the denial of a variance amounts to confiscation of the premises, consideration of the utmost fairness must be given to the application. Harrington Glen, Inc., 52 N.J. at 29. The board should view the application with a mind to grant relief, if at all possible. Miriam Homes, Inc. v. Perth Amboy Bd. of Adj., 156 N.J. Super. 456, 461 (App.Div. 1976) (Horn, dissenting). It must be kept in mind that in the event that the variance is denied because of failure to meet the negative *142 criteria, a substantial question will arise as to whether the ordinance as applied to plaintiff is arbitrary and amounts to an unconstitutional restriction on the use of the property. Gougeon v. Stone Harbor Bor., 52 N.J. at 225-26.
The Fifth Amendment to the United States Constitution and Article I, Paragraph 20 of the New Jersey Constitution prohibit the taking of property for public use without just compensation. A "taking" may occur without a formal condemnation proceeding or transfer of fee simple. This principle emanates from Justice Holmes' opinion in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), in which he stated: "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." The vitality of that general principle was recognized in Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), wherein the Court noted that "[T]he application of general zoning law to particular property effects a taking if the ordinance ... denies an owner economically viable use of his land...." Our New Jersey Supreme Court has held that "a compensable taking can occur when governmental action substantially destroys the beneficial use of private property. Restrictions on land use short of total appropriation, if sufficiently extensive and prolonged, may constitute a taking." Schiavone Const. Co. v. Hackensack, 98 N.J. 258, 263 (1985); A.M.G. Associates v. Springfield Tp., 65 N.J. 101 (1974). Such a taking may occur when area restrictions are applied to substandard lots. In 2 Rathkopf, The Law of Zoning and Planning (4th ed. 1986) the rule is expressed as follows:
If lots which are of a size, width, or frontage that conforms to the requirements of an ordinance (or were valid because of the absence of regulation at the time their dimensions were established) were unable to be used and thus were rendered valueless by the provisions of an ordinance or amendment which required greater area, width, or frontage than could be complied with, such regulations would be invalid in their application to such lots.

*143 An ordinance which would have the effect of rendering a parcel of property useless is unconstitutional. [§ 32.02, p. 32-4].
This doctrine was described well in Graves v. Bloomfield Planning Bd., 97 N.J. Super. 306 (Law Div. 1967):
It is clear that if this lot, located in a single-family residential zone, cannot be used for construction of the proposed dwelling, it will for all practical purposes be useless. It is settled in this State, as well as in other jurisdictions, that a municipality may not destroy the economic value of an isolated lot by retroactively prohibiting the erection thereon of a single-family dwelling through adoption of a zoning ordinance prescribing minimum lot size requirements unless relief is available to the owner of such undersized lot. Otherwise, the restriction against such use is plainly a taking of the property without just compensation. Relief is customarily provided by an exemption in the zoning ordinance or by the availability of relief by application for a variance from the board of adjustment. It is clear on the facts of this case that, if the owner had been required by the terms of the zoning ordinance to apply for a variance, such variance could not have reasonably been denied. [citations omitted] [Id. at 315].
The Court in Harrington Glen, Inc. cautioned that:
There is a stern necessity in a case like this one for thorough evaluation of the facts and crystal clear findings with respect to the statutory requirements for a variance. The Board must have in mind that if it finds plaintiffs are not entitled to relief, the ordinance will have zoned their property into idleness. Denial of permission to build a home upon the lot deprives it of all productive or beneficial use. The only distinction between such zoning restriction and an actual taking by the municipality is that the restriction leaves the owner with the burden of paying taxes on the property, while the outright taking relieves him of that burden. Ordinarily restraint upon all practical use, such as that which would follow from denial of a variance, is spoken of in terms of confiscation. [citations omitted] [52 N.J. at 29].
And in Commons the Court noted that:
There lurks in the background of cases of this type the possibility that denial of a variance will zone the property into inutility so that "an exercise of eminent domain [will be] . . called for and compensation must be paid." Harrington Glen, Inc. v. Leonia Bd. of Adjustment, 52 N.J. 22, 33 (1968). When that occurs all the taxpayers in the municipality share the economic burden of achieving the intent and purpose of the zoning scheme. [81 N.J. at 607].
Courts in other jurisdictions have recognized that where an owner of an isolated lot is deprived of all beneficial use of his property a variance must be granted to avoid a confiscation. Landmark Universal, Inc., v. Pitkin Bd. of Adj., 40 Colo.Ct. App. 444, 579 P.2d 1184 (1978); Russell v. D.C. Bd. of Adj., 402 A.2d 1231 (D.C. 1979); Anon v. City of Coral Gables, 336 So.2d 420 (Fla. Dist. Ct. App. 1976); Wolfe v. Village of Riverside, 60 *144 Ill. App.2d 164, 208 N.E.2d 833 (1965); Robyns v. City of Dearborn, 341 Mich. 495, 67 N.W.2d 718 (1954); Arverne Bay Const. Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587 (1938); Negin v. Board of Building and Zoning Appeals of the City of Mentor, 69 Ohio St.2d 492, 433 N.E.2d 165 (1982); Jones v. Zoning Board of North Catasauqua, 71 Pa. Commw. Ct. 595, 455 A.2d 754 (1983); Saravo Bros. Const. Co. v. Zoning Board of Review, Town of Johnston, 102 R.I. 442, 231 A.2d 9 (1967).[2] If a municipality does not choose to purchase property through its power of eminent domain it may not, by way of its zoning ordinances, render the lot useless thereby achieving the same effect without compensating the owner.
It is also important to remember that an impingement of the zoning restrictions may be of varying degrees. Thus, "[t]he less of an impact, the more likely the restriction is not that vital to valid public interests." Chirichello v. Monmouth Beach Zoning Bd. of Adj., 78 N.J. at 561; Commons v. Westwood Zoning Board of Adjustment, 81 N.J. at 607.
In Chirichello the Court identified some of the circumstances under which the granting of a frontage variance might not impair the zone plan. Relevant factors were compliance with the use, side yard and setback requirements and location of the house among other homes on small tracts with no greater frontages than applicant's. In Commons, the Court noted that while the proposed house would be smaller in size than others, that would not of itself justify denial of a variance since the size of the house did not violate any of the traditional zoning purposes of light, air and open space which were reflected in *145 the ordinance. The Court also stressed that the yard area required by the ordinance was met.
It must be recognized that the appearance of a house and its relationship to the neighborhood from an aesthetic and economic viewpoint are proper zoning purposes, since the appearance of a house may be related to the character of the district. N.J.S.A. 40:55D-62(a); Commons, 81 N.J. at 610. Therefore the applicant should submit detailed plans for the house that demonstrate its compliance with the building code and adequately describe its appearance. Commons at 611. If the size and layout of the house would adversely affect the character of the neighborhood, both with respect to a "desirable visual environment", N.J.S.A. 40:55D-2(i), and the value of the neighborhood properties, a board may justly conclude that a variance should not be granted for the structure as proposed. Commons, 81 N.J. at 610. The board could then either deny the application or approve it on condition that the proposal be modified to minimize adverse impact. But, as mentioned earlier, boards must make full and complete findings predicated upon factual support in the record. Again, Harrington Glen, Inc. provides guidance:
Denial of a variance on a summary finding couched in the conclusionary language of the statute is not adequate. There must be a statement of the specific findings of fact on which the Board reached the conclusion that the statutory criteria for a variance were not satisfied. Unless such findings are recited, a reviewing court cannot determine fairly whether the Board acted properly and within the limits of its authority in refusing a variance. [citations omitted] [52 N.J. at 28].
To assist itself in making adequate findings, the board can play a role in ferreting out the pertinent facts. The Court in Commons v. Westwood Zoning Bd. of Adj. clarifies the obligation of the board and the applicant:
In this connection boards should be mindful that they may receive assistance from other municipal employees. The board would not have been amiss here in calling the municipal building inspector to testify to construction requirements. The board or its counsel may also have addressed inquiries with respect to the size and appearance of the other homes, and the aesthetic and economic impact upon those homeowners. We do not mean to imply that the burden of proof is *146 not upon the applicant. It is, but in performing its function as a governmental body, the board may take some action which may be of assistance to it. [81 N.J. at 610-11].
In summary, by way of synthesizing but not intending to limit what has been said, the controlling law requires that the applicant should:
1. be required to carry the burden of proof, as in all other cases, as to both the positive and negative criteria;
2. demonstrate that efforts were made to bring the property into conformity with the zoning ordinance by attempting to acquire adjacent property or by offering to sell the nonconforming property to adjacent owners;
3. submit detailed plans of the proposed house which describe its appearance and prove its compliance with building codes;
4. attempt, where applicable, to demonstrate compliance with the use, side yard and set back requirements and location of the house among other homes on small tracts with similar frontages;
5. attempt to demonstrate that the proposed use does not violate any traditional zoning purposes such as light, air and open space.
The Board should:
1. evaluate the testimony to determine whether it should elicit additional information to supplement the record;
2. make specific findings of fact based on the record to support its conclusions;
3. consider whether, in lieu of denying an application, it can approve it subject to reasonable conditions which would modify the proposal and obviate or minimize any negative impact;
4. remember to be conscientious in its review of the facts since outright denial may amount to confiscation thus requiring condemnation by the municipality;
The problem in this case is that the Board had a very slim record from which to make any specific findings which would meet the requirement imposed by Harrington Glen, Inc. and other cases. The objectors provided some evidence, mostly of a conclusionary character, which supported a finding that the negative criteria were not met. One objector asserted that the use would be detrimental to the area, arguing that a three bedroom house on that size lot would be of no benefit to anyone. Another testified that there are no other lots in the area of that size. A third said that all the homes in that area are large houses. More importantly, the plaintiff did little to create a record concerning the negative criteria.
*147 With regard to the positive criteria, the Board's conclusion is difficult to justify. The plaintiff made the required efforts to sell and could not buy adjacent land. Indeed, even at the hearing the plaintiff was ready to sell to an adjacent property owner at the contract price even though he could have demanded the fair market value. The plaintiff also provided testimony concerning compliance with the building code and the bulk requirements of the zoning ordinance. However, since the plaintiff failed to address sufficiently the negative criteria, the Board could do no more than speculate on an inadequate record. Therefore, the only fair result in this case is to remand for a new and full hearing.
NOTES
[*] This opinion is an amplification of an oral opinion issued January 29, 1987.
[1] In an isolated lot case, these factors are usually of critical importance because they generally determine whether the land can be utilized for any purpose. However, our Supreme Court has recently held that where an undersized lot had a structure upon it, the willingness of an adjacent owner to purchase the property at fair market value did not preclude a variance being granted to the purchaser of the undersized lot. Davis Enterprises v. Karpf, 105 N.J. 476 (1987). There are considerations involved in the developed nonconforming lot cases which are not implicated in the vacant nonconforming lot cases. This opinion addresses itself only to the vacant lot cases.
[2] The United States Supreme Court emphasized the constitutional dimensions of the issue by granting certiorari to two cases in which the central issue is an alleged taking by zoning restrictions. First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles, ___ U.S. ___, 106 S.Ct. 3292, 92 L.Ed.2d 708 (1986); Nollan v. California Coastal Comm'n, 177 Cal. App.3d 719, 223 Cal. Rptr. 28 (1986), cert. granted, ___ U.S. ___, 107 S.Ct. 312, 93 L.Ed.2d 286 (1986).