256 N.J. Super. 647 (1992)
607 A.2d 1039
JACK KETCHERICK, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF MOUNTAIN LAKES BOARD OF ADJUSTMENT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1991.
Decided June 1, 1992.
*648 Before Judges MICHELS, O'BRIEN and HAVEY.
Michael D. Sullivan argued the cause for appellant (Stickel, Koenig & Sullivan, attorneys; Michael D. Sullivan, on the brief).
*649 Richard T. Sweeney argued the cause for respondent (Sears, Sweeney & Marcickiewicz, attorneys; Harry L. Sears, on the brief).
The opinion of the Court was delivered by HAVEY, J.A.D.
In this zoning case defendant Board of Adjustment of the Borough of Mountain Lakes (Board) appeals from a judgment ordering it to grant a hardship variance to plaintiff. In 1963 plaintiff's predecessor in title subdivided and sold a tract of land leaving the subject lot isolated and substandard. The Board denied plaintiff's application for a variance on the basis that any hardship was self-imposed. The trial court reversed, concluding that plaintiff was not "significantly related to the original wrongdoer" and, because of the passage of 28 years, "it's time to put this land back in the bank of normal lands in our society[.]" We reverse. Where a predecessor in title created the nonconforming use knowing of the zoning restrictions, plaintiff, as successor in title, is not entitled to a variance based on hardship, despite the passage of time and the fact that he is not "significantly related to the original wrongdoer."
The essential facts are not in dispute. Plaintiff owns a vacant lot, designated as Lot 58A in Block 56 on the tax map of the Borough of Mountain Lakes. The lot has frontage on North Briarcliff Road of 101.07 feet and a total area of 17,717 square feet. The borough's zoning ordinance requires minimum lot area of 22,500 square feet and frontage of 150 feet.
In 1954, a party named Jones owned the lot, as well as a contiguous lot known as "the Hungerford Property." At the time, the zoning ordinance required 22,000 square feet in lot area and 150 feet frontage.[1] Together, Lot 58A and the contiguous *650 "Hungerford Property" exceeded the minimum bulk requirements of the then existing zoning ordinance.
In 1963, Jones sold the "Hungerford Property." Plaintiff acknowledges that the subject lot and the "Hungerford Property" had merged, and therefore this conveyance constituted an illegal subdivision of the property.[2] Jones made the conveyance despite the fact her attorney had advised her that the remaining lot would not be buildable without lot area and frontage variances.
In 1976, John and Kate Lee acquired the property for $1 plus back taxes in the amount of $463.66. In 1979 plaintiff, as president of J & J Woodworking Company, Inc. (J & J) which presumably had some interest in the property, applied to the Board pursuant to N.J.S.A. 40:55D-70c(1), seeking hardship variances from the lot area, frontage and side-yard requirements of the ordinance. The application was denied by amended resolution dated August 14, 1980 because J & J failed to demonstrate hardship, and further because "any difficulties or hardships were self-imposed."
In January 1981, plaintiff acquired title to the land for $1. He filed a second application in 1987 for hardship variances or alternatively for relief under the newly-enacted c(2) subsection of N.J.S.A. 40:55D-70. The Board denied the application, concluding that the doctrine of res judicata barred consideration of the matter. However, after plaintiff filed an action seeking a reversal of the Board's determination, the Law Division remanded the matter for a full hearing as to the merits of plaintiff's application.[3]
*651 On remand, plaintiff proposed the construction of a 2,652 square-foot residential dwelling on the subject lot. He sought relief from the lot area and frontage provisions of the ordinance, as well as from the steep slope ordinance which reduced the available net lot area to 8,330 square feet based upon steep slope calculations. Alternatively, plaintiff sought relief under N.J.S.A. 40:55D-70c(2). Plaintiff's "hardship" was predicated on the fact that the lot was isolated, and his offers to sell the lot to the adjoining property owners for $140,000 (based on its value with the variances) were rejected. He also established the fact that no property was available to purchase in order to make the lot conform with the provisions of the ordinance. Plaintiff also presented proof that the proposed house was compatible with other homes in the neighborhood, and that his proposal was consistent with the zoning scheme of the municipality.
In denying the application, the Board found that any hardship, if it did exist, "was self-imposed based upon the actions of the applicant's predecessor in title." Specifically, it noted:
As far back as 1954, when the subject parcel was part of a larger conforming piece, the governing body established minimum lot area of 22,000 square feet. Despite this fact, the applicant's predecessor in title ignored the clear intent and obvious purpose by creating the substandard lot in question. Approval of this application would have a deleterious effect on the intent and purpose of the zone plan and zoning ordinance.
It also determined that plaintiff failed to satisfy the negative criteria of the statute; that is, that relief could be granted without substantial detriment to the public good and the variance would not substantially impair the intent and purpose of the zone plan and zoning ordinance. See N.J.S.A. 40:55D-70. Finally, the Board found that plaintiff was not entitled to relief under subsection c(2) of N.J.S.A. 40:55D-70 because "the granting of the requested variances would merely serve the purposes of the owner and not benefit the community in any way."
*652 In reversing the Board, the trial court first concluded that plaintiff had established hardship under the test pronounced by Nash v. Board of Adjust., Tp. of Morris, 96 N.J. 97, 102, 474 A.2d 241 (1984) and Dallmeyer v. Lacey Tp. Bd. of Adjust., 219 N.J. Super. 134, 139, 529 A.2d 1063 (Law Div. 1987). The court recognized the well-settled rule that when a hardship is self-imposed, the board may deny the variance application. Nevertheless, it focused on the passage of time and the relationship between the applicant and the "wrongdoer" as variables which may justify relief notwithstanding the self-created nature of the hardship. Specifically, the trial court noted that "[i]t's now been twenty-eight years since the original wrong." It reasoned:
somewhere along the line we have to let somebody make money and perhaps make disproportionate money because he's willing to take a risk as to whether he's reached the stage where he can break the curse on the land and convert it to useful development.
It further noted:
Why not just be straightforward about it and say that when enough time has gone by to implement the basic policies behind this rule of self-created hardship, and we have an applicant who is not directly related in a manipulative way or in an intended beneficiary way to the original wrongdoer, .. . then we say that the curse is lifted and the person may apply for the variance treating this as an honest to goodness isolated undersized lot without any self-created hardship doctrine attached to it.
Acknowledging that "somebody will get a windfall" from such a result, the trial court nevertheless concluded that "that's the history of free enterprise capitalism, for better or for worse."
It is well-settled that the "voluntary and premeditated isolation" of a lot which is subject to a hardship variance application is "neither an exceptional nor an undue hardship to the plaintiff within the import and meaning of the statute defining the power of the boards of adjustment in the allowance of variances." Herman v. Board of Adjust., Tp. of Parsippany-Troy Hills, 29 N.J. Super. 164, 171, 102 A.2d 73 (App.Div. 1953). For example, in Branagan v. Schettino, 100 N.J. Super. 580, 587-88, 242 A.2d 853 (App.Div. 1968), we held that where a *653 predecessor in title owned two adjoining, integrated lots, which together conformed with the requirements of the zoning ordinance, and thereafter voluntarily severed common title to the lots by selling one, his successor could not "as a matter of law," satisfy the "necessary affirmative showing of hardship." We reasoned:
Under these circumstances, to allow the variance for [the isolated lot] after the voluntary severance of common title by act of the Schettinos was to subserve a purely private economic interest at the expense of the public interest in the maintenance of the integrity of the zoning plan. [Id.]
Citing Branagan, our Supreme Court in Chirichello v. Zoning Bd. of Adjust. of Monmouth Beach, 78 N.J. 544, 397 A.2d 646 (1979) held:
In determining whether undue hardship has been shown, it is always appropriate to consider whether the situation was self-created. For example, if the property had had a 100-foot front on Wesley Street with the same depth and therefore the necessary total area, and the owner sold one-half so that the remaining land did not meet the minimum requirements, we would say the owner created the condition and therefore relief would not be warranted. Branagan v. Schettino, 100 N.J. Super. 580, 242 A.2d 853 (App.Div. 1968). Or, if the owner of a 50-foot front lot had purchased the adjoining 50-foot lot so that the entire piece was conforming, then the owner would be in the same position as if he had always owned the land with a 100-foot frontage. Upon such an acquisition it may be said absent unusual circumstances that for the purpose of the zoning ordinance there had been a merger and that a later sale of a part of the tract which caused nonconformity would result in a hardship of his own doing. Cf. Branagan v. Schettino, supra at 586, 242 A.2d 853. [Id. at 553, 397 A.2d 646 (emphasis added).]
See also Commons v. Westwood Zon. Bd. of Adjust., 81 N.J. 597, 606, 410 A.2d 1138 (1980) (if the property owner or his predecessors in title created the nonconforming condition, then the hardship may be deemed to be self-imposed).
The reason for this "self-created" hardship rule is apparent. To obtain a variance under N.J.S.A. 40:55D-70c(1), the developer must show a physical peculiarity of the property, or some other extraordinary or exceptional situation uniquely affecting the property which, due to the zoning ordinance, causes the imposition of exceptional practical difficulties or undue hardship upon it. See Chirichello, 78 N.J. at 552, 397 A.2d 646. In isolated lot cases, where the claim is that the board must grant a variance, see Kaufmann v. Planning Bd., Tp. of Warren, *654 110 N.J. 551, 562, 542 A.2d 457 (1988), hardship is predicated on the fact that without the variance the property has been zoned into inutility. See Commons, 81 N.J. at 607, 410 A.2d 1138; Harrington Glen, Inc. v. Board of Adjust., Boro. of Leonia, 52 N.J. 22, 33, 243 A.2d 233 (1968). However, if the "practical difficult[y]" or "hardship" which renders the property incapable of being used for any purpose in accordance with the zoning restrictions have themselves been caused solely by the owner or his predecessor, then the predicate for relief  that the hardship be caused solely by the strict application of the zoning ordinance upon the particular property  is lacking. See 3 Rathkopf, The Law of Zoning and Planning, § 39.01 at 39-1 (4th ed. 1985). Stated differently, when the developer severs a conforming lot and sells a portion to a third party knowing of the zoning requirements, the remaining portion is not zoned into idleness. "Rather, it [is] sold into idleness." George F. Barnes Land Corp. v. Board of Adjust., Tp. of Wyckoff, 174 N.J. Super. 301, 304, 416 A.2d 431 (App.Div. 1980) (emphasis added).
We find no authority for the proposition advanced by the trial court that passage of time or the absence of a relationship between the present owner and the "wrongdoer" may justify abandonment of the self-created hardship rule. In Commons, the Supreme Court made clear that "[i]f the property owner or his predecessors in title created the nonconforming condition, then the hardship may be deemed to be self-imposed." 81 N.J. at 606, 410 A.2d 1138 (emphasis added). Similarly, in Griffin Constr. Corp. v. Board of Adjust., Tp. of Teaneck, 85 N.J. Super. 472, 477, 205 A.2d 313 (App.Div. 1964), certif. denied, 44 N.J. 408, 209 A.2d 143 (1965), we held that:
where an original owner would be entitled to a variance under a specific set of facts, any successor in title is ordinarily also entitled to such a variance, providing that no owner in the chain of title since the adoption of the zoning restriction has done anything to create the condition for which relief by variance is sought. (Emphasis added).
See also George F. Barnes Land Corp., 174 N.J. Super. at 304, 416 A.2d 431 (where predecessor developer which owned a large *655 tract, sold an undersized lot to plaintiff after adoption of the zoning ordinance, the self-created hardship defeats plaintiff's right to a variance). And see 3 Rathkopf, § 39.01 at 39-1 (if hardship has been "caused or created by the property owner or his predecessor in title," the essential basis for a hardship variance is lacking). (Emphasis added).
This is so because "the status of land use does not turn on the status of ownership." Urban v. Planning Bd., Boro. of Manasquan, 124 N.J. 651, 656-67, 592 A.2d 240 (1991). Thus, when neither the owner of the property at the time of the adoption of the zoning ordinance, nor subsequent owners did anything to create the undersized lot, a right to relief possessed by the original owner passes to the successors in title, and "[s]uch right is not lost simply because the succeeding owner bought or contracted to buy with knowledge of the lot-size restriction." Harrington Glen, Inc., 52 N.J. at 28, 243 A.2d 233; see also Wilson v. Borough of Mountainside, 42 N.J. 426, 452, 201 A.2d 540 (1964). The converse is also true. As we recently stated in Dalton v. Ocean Tp. Zon. Bd. of Adjust., 245 N.J. Super. 453, 463-64, 586 A.2d 262 (App.Div.), certif. denied, 126 N.J. 324, 598 A.2d 884 (1991):
if a prior owner created the hardship, and would therefore not be entitled to a variance, the impediment is not removed by a purchase by a buyer who did not participate in creating the problem. (Emphasis added).
Thus, our case law has recognized no exception to the self-imposed hardship rule based upon passage of time or transfer of title.
Moreover, to allow a variance based on such variables would encourage landowners to violate the law and subvert the integrity of the zoning scheme. It would permit the creation of a substandard lot by a predecessor and sale of the lot to an "innocent" successor willing to speculate that passage of time and transfer of title will render the lot buildable. The citizens of a municipality have a right to demand protection from such speculation and deliberate flaunting of the zoning standards. See Deer-Glen Estates v. Board of Adjust., Boro. of Fort Lee, 39 N.J. Super. 380, 386, 121 A.2d 26 (App.Div. 1956).
*656 Further, carving an exception to the self-created hardship rule based on the "passage of time" would create practical difficulties for zoning boards. For example, resolution of the question as to what constitutes a passage of time sufficient to, as the trial court phrased it, "break the curse" of the self-imposed nature of the hardship may lead to arbitrary and conflicting results. What temporal yardstick would be applied to assure consistency, and to prevent erosion of the zoning board's quasi-judicial power to control variances from the zoning standards? Finally, weakening of the rule runs counter to the well-settled zoning principle disfavoring the creation or expansion of nonconforming rights. See Urban, 124 N.J. at 656, 592 A.2d 240. In short, rewarding the successor in title with the right to a variance where his or her predecessor has deliberately flaunted zoning standards by creating the nonconformity would, in our view, render zoning ordinances ineffective to control land use.
Here, in 1963, Jones illegally subdivided her land by selling part of it to a third party, leaving the subject lot substandard in lot area and frontage. She did so notwithstanding the advice from her attorney that variances would be required if Jones desired to develop the subject lot. Only 16 years later, plaintiff acquired some interest in the property and applied for a hardship variance. He then took title in 1981 for the purchase price of $1 and applied again in 1987 for the variance. He is thus in a position to enjoy a substantial windfall by developing the property, despite its substandard nature, or selling it to the adjoining property owners at a price predicated on a value of the lot with variances having been granted. Although plaintiff may not be "significantly related to the original wrongdoer," it was not arbitrary or capricious for the Board to determine that he should not benefit from his predecessor's deliberate disregard of the zoning standards.
The parties acknowledge the trial court did not address plaintiff's claim that he is entitled to relief under subsection c(2) *657 of N.J.S.A. 40:55D-70. The confusion about the meaning of c(1) "hardship" should not "slosh over into the interpretation of the c(2) standard." Kaufmann, 110 N.J. at 562, 542 A.2d 457. Rather, the grant of relief under c(2) "must be rooted in the purposes of zoning and planning itself and must advance the purposes of the [Municipal Land Use Law]." Id. The grant must benefit the community in that "it represents a better zoning alternative for the property[,]" and may not be granted merely to advance the purposes of the owner. Id. at 563, 542 A.2d 457. Thus, the focus in a c(2) case is not whether the current zoning ordinance creates a "hardship" on the owner warranting a relaxation of the standard, but "on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community." Id. at 563, 542 A.2d 457. Since the trial court did not address plaintiff's c(2) request, a remand for that purpose is necessary.
Reversed and remanded to the trial court for further proceedings.
NOTES
[1] In 1976, the zoning ordinance was amended to require 22,500 square feet in lot area and 150 feet frontage.
[2] In view of plaintiff's concession, we need not decide the question of whether in fact there had been a merger. See Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967); Dalton v. Ocean Tp. Zon. Bd. of Adjust., 245 N.J. Super. 453, 586 A.2d 262 (App.Div.), certif. denied, 126 N.J. 324, 598 A.2d 884 (1991).
[3] The trial court apparently found that res judicata did not bar the present application because there had been significant changes in the neighborhood and community in the eight years since J & J's 1979 application. The court also considered the fact that the "flexible" c(2) variance was not available to the applicant in 1979.