277 N.J. Super. 220 (1994)
649 A.2d 422
CAROL SOMOL, PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF MORRIS PLAINS AND BOROUGH OF MORRIS PLAINS, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS,
v.
JAMES CUSATO AND MEGANNE CUSATO, DEFENDANT/THIRD-PARTY INTERVENERS.
Superior Court of New Jersey, Law Division Union County.
Decided February 18, 1994.
*223 Lawrence J. Fox, for plaintiff.
Marc D. Weiner for defendant Board of Adjustment of Borough of Morris Plains (Hersh, Ramsey & Berman, attorneys).
Stephen C. Hansbury for defendant Borough of Morris Plains (Kummer, Knox & Naughton, attorneys).
Paul Bangiola for defendants third-party interveners (O'Donnell, McCord, Helfrich & Bangiola, attorneys).
PISANSKY, J.S.C.
This is an action in lieu of prerogative writs. Plaintiff, Carol Somol (hereinafter "Somol"), filed an application with the defendant, Morris Plains Board of Adjustment (the Board), for width and area variances required to a build a single family home on her undersized lot. Meetings were held on May 26, June 23, July 28, August 25, September 22 and October 27, 1992, at which objectors and their counsel were heard. Both the width and area variances were denied by resolution dated October 27, 1992. Plaintiff *224 thereafter filed this appeal seeking a reversal of the Board's decision.
The subject property is Lot No. 8 located on Block 54 on Cleveland Avenue in Morris Plains. The area is zoned pursuant to the Zoning Ordinance adopted in 1958 and requires a lot to have an area of 18,000 square feet, a width of 120 feet and a depth of 150 feet. Lot 8 has 10,500 square feet and measures 70 feet in width and 150 feet in depth. Somol proposed to build a home of approximately 2,400 square feet that would comply with the side yard and set back zone requirements. On one side of Lot 8 are Lots 5, 6 and 7, consisting of the Morris Plains Cooperative Play School ("Nursery School"), on the other side is Lot 9, which is a corner lot consisting of a private residence fronting on Granniss Avenue owned and occupied by defendants/third party intervenors, James and Meganne Cusato (Cusatos). Lot 9, trapezoid shaped, has a front that measures 157.78 feet on Granniss Avenue, 83.20 feet along Cleveland Avenue and measures at most 132.13 feet in depth.
Somol acquired the property from the DeNapolis (her parents) as a gift by deed dated March 14, 1977. The DeNapolis acquired the property from Catherine Delaney by deed dated May 29, 1963 for $2,000.00. At the time of the 1963 transfer, Delaney also owned Lot No. 9 (the lot presently occupied by the Cusatos). Catherine V. Delaney obtained title to Lot 8 from Louis N. Grove in April 1944. At the time of this conveyance in 1944, Mrs. Delaney and her husband already owned adjoining Lot 9 on which they resided. Therefore, Lot 8 had been in common ownership with Lot 9 for approximately 19 years prior to the Delaney/DeNapoli conveyance in 1963.
Hearings before the Board were held over the course of several months. Somol testified that she took title of Lot 8 in 1977 with the intent to build a home for herself and her husband, now deceased. She also testified that her parents had paid a $700.00 road improvement assessment on the property; that the property was always assessed as a separate lot, and continues to be so *225 assessed to this day. Further, Somol testified that she had offered to sell the property to both adjoining neighbors, but no responses were received. No offers were made to the rear neighbor because that property is off center and because the purchase of the rear property would not help to increase the plaintiff's deficient frontage. Somol and her expert witness John Lukoff (Lukoff), a licensed real estate salesperson, solicited an offer from a builder to purchase for $85,000.00; however, the offer was subject to a granting of the variances. Somol testified that she solicited the offer to obtain a fair market value appraisal of the property.
Lukoff testified that without the variances the property was useless and that the proposed structure would not negatively affect the value of the surrounding homes. Also, he pointed out that other homes were built on undersized lots in the neighborhood, although they were built before the relevant ordinance was enacted in 1958.
At a subsequent hearing, the objectors introduced their expert witness David Zimmerman (Zimmerman), a New Jersey licensed professional planner. Zimmerman testified that he examined the lot and determined that nothing could be built on the lot that would be "compatible" with the residences in the "primary neighborhood". (Zimmerman's definition of "primary neighborhood" is limited to include only the four houses on Cleveland Avenue.) Zimmerman opined that granting the application would set a precedent that the owners of undersized vacant lots to the rear of Cleveland Avenue would use to build homes on those lots. However, it is apparent that the rear lots can be merged with adjacent vacant lots. This option is not available to Somol.
The objectors, as well as several unrepresented neighbors, appeared at the hearings to testify against the application. A major concern was the alleged negative impact the proposed home would have on the existing homes' values. The Cusatos testified that they purchased their home about five or six years ago on the basis that the lot would remain undeveloped and now objected *226 because they were concerned with the impact the proposed house would have on their backyard view. Presently, Somol's lot is a wooded area directly behind Cusatos' yard; if the lot is cleared, the Cusatos alleged that their view would be cleared to the next intersection. Mrs. Cusato further testified that the $85,000.00 quoted in Somol's selling offer was too high and offered to buy the lot for $4,000.
At the July 28 hearing, Somol introduced the testimony of her rebuttal expert witness Adrian Humbert (Humbert), a licensed professional planner. Humbert testified that because of the grandfather clause in the ordinance, the drafters must have expected some undersized lots in the area. He noted that one of the existing homes on Cleveland Avenue occupied 2,505 square feet and that Somol's proposed structure would occupy 2,464 square feet, just slightly less than the already existing structure. He further testified that the proposed house would not have a negative impact on the area and that allowing the lot to be zoned into inutility would be potentially detrimental in that vacant lots are frequently used as dumping sites. In support of this point, Somol thereafter testified that she had previously removed debris left on the lot.
At the August 25 meeting, the Board, by a vote of 4 to 3, authorized a resolution of approval to be drawn; on September 22, the motion of approval failed when two of the original positive votes were absent. At the subsequent and final hearing, a resolution memorializing the denial was adopted by the Board. The Board found that Somol had not established that a hardship existed and even if the denial of the variances would result in such a hardship, the latter was self-created by reason of the 1963 conveyance of the nonconforming lot. In additional support of this contention, the Board found that Somol's predecessors were charged with the knowledge that the lot was undersized and, therefore, the lot was sold, as opposed to zoned, into inutility, citing Chirichello v. Zoning Bd. of Adj. of Borough of Monmouth Beach, 78 N.J. 544, 397 A.2d 646 (1979). The Board also contended *227 that Lots 8 and 9 had merged prior to the 1963 transfer because the ordinance was already in effect and the lots were in common ownership at that time.
Furthermore, the Board found that Somol failed to prove that the proposed structure would not substantially impair the intent and purpose of zoning and that it would not be detrimental to the public good. Finally, the Board found that the proposed structure would have a negative "substantial impact" upon the lighting, spacing and general appearance of the area.
It is well established that the decisions made by local Boards of Adjustment are entitled to judicial deference, the underlying rationale being that the local officials serving in those agencies are "experts" regarding local matters, including the community's needs and interests. Kramer v. Bd. of Adj. of Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). Therefore, a court cannot substitute its judgment in place of the zoning board. Id. When reviewing the denial of a variance as in our case, the philosophy of judicial deference is even more compelling. See Cummins v. Bd. of Adj. of the Borough of Leonia, 39 N.J. Super. 452, 460, 121 A.2d 405 (App.Div. 1956), certif. denied, 21 N.J. 550, 122 A.2d 672 (1956). The issue before the court is whether or not plaintiff offered competent evidence satisfying the statutory criteria such that the Board's denial was arbitrary, capricious or unreasonable. Farrell v. Zoning Bd. of Adj. of Estell Manor, 193 N.J. Super. 554, 475 A.2d 94 (Law Div. 1984).
The plaintiff applied for her variances under N.J.S.A. 40:55D-70(c)(1). To succeed before the Board, she had to show that she would suffer exceptional undue hardship if the variances were not granted (positive criteria) and that the granting of the variances would not result in a substantial detriment to the public good or the zoning plan (negative criteria). Nash v. Bd. of Adj. of Morris Tp., 96 N.J. 97, 102, 474 A.2d 241 (1984); Dallmeyer v. Lacey Tp. Bd. of Adj., 219 N.J. Super. 134, 139, 529 A.2d 1063 (Law Div. 1987).
*228 Before determining if the statutory requirements for the variances have been met by the plaintiff, it is necessary that the court consider whether plaintiff's lot merged with the adjoining lot under the doctrine known as merger first set forth in Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967). Under this doctrine, separate undersized but contiguous lots fronting on the same street in single ownership ordinarily merge into one lot and conveyance of a portion will require subdivision and variance approval. By the separate undersized lots merging into one lot, there results a conforming lot, or at least a less substandard lot; this making of a conforming lot, or less substandard lot, out of adjacent undersized lots is the clear purpose of the doctrine. Dalton v. Ocean Tp., 245 N.J. Super. 453, 461, 586 A.2d 262 (App.Div.), certif. denied, 126 N.J. 324, 598 A.2d 884 (1991).
Since the Delaneys at the same time owned both Lot 8 and Lot 9, the Board concluded a merger occurred citing Ketcherick v. Borough of Mountain Lakes, 256 N.J. Super., 647, 607 A.2d 1039 (App.Div. 1992). However, in Ketcherick, the applicant admitted that merger had occurred and the court accepted that as fact; therefore, that case is not responsive to our discussion of whether merger took place herein. The court there said:
In view of plaintiff's concession, we need not decide the question of whether in fact there has been a merger. See Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967); Dalton v. Ocean Tp. Zoning Bd. of Adj., 245 N.J. Super. 453, 586 A.2d 262 (App.Div.) certif. denied, 126 N.J. 324, 598 A.2d 884 (1991).
[Id., 256 N.J. Super. at 650, n. 2, 607 A.2d 1039]
In Loechner, the plaintiffs were seeking a variance in an effort to sell a nonconforming portion of property currently in common ownership. The court set forth procedures "for future guidance" to obtain subdivision approval where the resulting lots would be nonconforming. Id., 49 N.J. at 512, 231 A.2d 553. The court did not specifically hold that transfers made prior to its decision would be subject to the merger doctrine. Research shows no reported cases that have decided that the doctrine of merger should be applied to transfers made prior to 1967. Before the Loechner decision, there was no clear law in this area. However, see Burke *229 v. Spring Lake Board of Adjustment, 52 N.J. Super. 498, 145 A.2d 790 (App.Div. 1958) and Schack v. Trimble, 48 N.J. Super. 45, 137 A.2d 22 (App.Div. 1958). Also, see William M. Cox, New Jersey Zoning and Land Use Administration, § 12-2.1, at 203 (1993). Neither the Delaneys nor plaintiff's parents could have been aware of a doctrine that did not come into existence until four years after Plaintiff's parents obtained title, but that in itself does not mean that the doctrine or its purpose would not be controlling. One zoning law expert is of the opinion that the question of merger in these Loechner or "adjacent lot" cases will turn "on their unique facts," Cox, id., § 12-2.3. at 207 and that there is no easy solution deciding whether merger has, in fact, occurred. Id. at 211.
It could be reasoned that the merger doctrine simply does not apply because the lots in question are not side to side of each other but are back to side and are not fronting on the same street. See Chirichello v. Zoning Bd. of Adj., Monmouth Beach, 78 N.J. 544, 397 A.2d 646 (1979), where an important exception to the merger doctrine was set forth. See p. 553, 397 A.2d 646:
Here, however, no such merger occurred, for the acquisition of lots 10 and 11, Lot 10 being located immediately to the rear of lot 8, did not for all purposes of the zoning ordinance create one tract. Even though under common ownership, the combined lots had the necessary total area of more than 9,000 square feet, the owner could not have built a house on Wesley Street because frontage on the street was less than 75 feet. Under these circumstances, it cannot be said that the sale of the two rear lots resulted in such a self-created condition that the land owner was disabled per se from an entitlement to a variance. * * *
Further, see 3 Ziegler, Rathkopf's The Law of Zoning & Planning § 32.05[6] at 32-29, (N.Y. Clark Boardman, 4th ed. 1975) Release No. 41 (Mar. 1992):
Back-to-Back or "L" Shaped Lots  Cases in which the exemption [from adjoining lots merging into one] and protection afforded lots in single and separate ownership have been held to apply have included lots that are back-to-back (i.e., lots that have a common rear line) and "L" shaped lots (where the rear line of one is to the side of the other and each has frontage on different streets). (Emphasis added.)
It is true that with the rear line of Lot 9 to the side line of Lot 8, and with Lot 9 fronting on Granniss Avenue and Lot 8, plaintiff's lot, fronting on Cleveland Avenue, that the lots resemble *230 more the lots in Chirichello than the adjoining lots fronting on the same street configuration found in Loechner. It would not be unreasonable to conclude that the Chirichello exception applies and that there is no merger if all we considered was the positioning of the lots. But if Lot 8 had merged with Lot 9, there would have been one conforming lot facing Granniss Avenue, with a frontage of 157.78 feet, 120 feet required, a depth of 153.20 feet, 150 feet required, and trapezoid, not "L" shaped. Most importantly, the purpose of the merger doctrine would have been fulfilled, making a conforming lot out of adjacent undersized lots. It follows that it cannot be concluded that the Chirichello exception to merger is applicable if it is found that a merger would create a conforming lot as in this case. Therefore, there is no alternative but to examine the unique facts herein to resolve the merger issue. The examination of those facts shows the following: the owners never treated the lots as one lot fronting on Granniss Avenue or as one lot fronting on Cleveland Avenue. The existing home on Lot 9 faces Granniss Avenue and is the same house that existed when the Delaneys owned the lots in 1944. The record indicates that this structure has been standing over one hundred years and was once the original caretaker's house for the Granniss estate. The record also indicates that the properties were separately acquired and that plaintiff's property was never used by the Delaneys for any purpose, but always remained a vacant wooded lot. The borough treated these lots as two separate lots. Plaintiff testified that in 1964 the borough required an assessment for Cleveland Avenue owners of building lots. The DeNapolis paid that assessment and they and their daughter have paid taxes to the borough for the lot since that time. Lot 8 has always been treated by both the owners and the borough as a separate building lot. Based on these facts, this court finds that the lots did not merge despite common ownership at one time, and lot 8 is an isolated lot and should be dealt with accordingly. Therefore, the rationale of the merger doctrine of Loechner is applicable, but there is no merger because of the unique facts of our case.
*231 Discussing the plaintiff's undue hardship necessary to be granted her variances, she must show that without the requested variances, her isolated lot, as above determined, will have no beneficial use. "The term `hardship' is descriptive of a restriction upon a landowner's use of his land that deprives him of all beneficial use." Rathkopf, supra, § 38.02[1] at 38-10 Release No. 27 (Feb. 1988). "In isolated lot cases, where the claim is that the board must grant a variance, see Kaufmann v. Planning Bd., Tp. of Warren, 110 N.J. 551, 562, 542 A.2d 457 (1988), hardship is predicated on the fact that without the variance the property has been zoned into inutility." Ketcherick, supra, 256 N.J. Super. at p. 654, 607 A.2d 1039. Also, see Davis Enterprises v. Karpf, 105 N.J. 476, 481, 523 A.2d 137 (1987). Clearly, the plaintiff has shown that without the variances the property will continue being a useless vacant wooded lot that has been zoned into inutility.
The Board's finding that plaintiff showed no undue hardship, in part, was based on the constructive knowledge of the plaintiff's family that the lot was nonconforming at the time of purchase back in 1963 and that, therefore, any alleged hardship was self-imposed. The lot was purchased by John F. Delaney and Catherine V. Delaney from Lewis K. Grove on April 8, 1944. This lot was then transferred from Catherine V. Delaney, widow, to Patrick DeNapoli and Jane DeNapoli on May 29, 1963. On March 14, 1977, the lot was transferred from Patrick and Jane DeNapoli to their daughter and her husband, Robert Somol and Carol Somol. At the time of the Delaney purchase of the lot in 1944, the zoning requirements for all residential zones were an area of 5,000 square feet and a frontage of 50 feet. Lot 8 met these requirements. In 1948 the zoning requirements changed and lot 8, which was in Residence A Zone, was required to have an area of 18,000 square feet. In 1958 the zoning ordinance was amended and Lot 8 was required to have an area of 18,000 square feet and a width at the setback line of 120 feet.
The Delaneys owned the property when the zoning ordinance was amended and they would have been entitled to a *232 variance to build on this lot, as it was the enactment of the ordinance which created the substandard condition rather than any act on their part or any act of the predecessor in title. If the Delaneys had retained ownership and sought lot-size variances, they would have been entitled to the same and, it would appear, so does the successor in title, the plaintiff herein. The law is clear that if an owner who is entitled to a lot size variance on hardship grounds sells to a buyer who has knowledge of the non-conformity, the right to a variance is not lost as a result of the buyer's knowledge. Harrington Glen, Inc. v. Municipal Bd. of Adj. Bor. Leonia, 52 N.J. 22, 28, 243 A.2d 233 (1968). However, if a prior owner created the hardship, the purchaser, even if he did not participate in the creation of the violation, would not be entitled to a variance on the basis that the hardship was self-imposed. Commons v. Westwood Zoning Board of Adjustment, 81 N.J. 597, 606, 410 A.2d 1138 (1980). An examination of the chain of title and the record shows that the lot was zoned into a substandard condition and that the hardship alleged, notwithstanding the constructive knowledge of the substandard condition, is not self imposed by any action of the plaintiff or predecessor in title.
Another related factor in determining whether undue hardship has been shown by the plaintiff is the effort she made to bring the property into compliance with the zoning ordinance. Commons v. Westwood Zoning Board of Adjustment, Id. This would include attempting to either purchase property from adjoining landowners to add to the existing lot or efforts to sell the nonconforming lot to the adjoining landowners at a reasonable value.
The record sets forth that plaintiff attempted, by letter, to buy property from the adjoining owners to add to the existing lot. Neither owner was willing to sell. In addition, these letters also requested a reasonable offer for the purchase of the lot. The record reflects that the director of the nursery school, the owner of adjoining Lots 5, 6 and 7, expressed an interest in purchasing the property but stated that the school was not in a *233 financial position to do so. The plaintiff offered into evidence a contract for the purchase of her property, with the necessary variances, in the amount of $85,000.00. The Cusatos offered $4,000.00 to purchase the lot. This did not represent the fair value of the property with the variances. Accordingly, their offer could not be considered as being adequate to overcome the hardship of the plaintiff. Nash v. Board of Adjustment of Morris Township, supra, 96 N.J. at 109, 474 A.2d 241. It is evident that the plaintiff demonstrated that efforts were made to bring the property into conformity with the zoning ordinance by attempting to acquire adjacent property or by offering to sell the nonconforming property to adjacent owners, a requirement of the applicant for variance in an undersized lot case. Dallmeyer v. Lacey Tp. Bd. of Adj., 219 N.J. Super. 134, 146, 529 A.2d 1063 (Law Div. 1987).
Therefore, the plaintiff showed by credible evidence that she would suffer undue hardship if the variances were not granted; that the undue hardship was not self-imposed, and that she had made adequate attempts to bring the property into compliance.
However, not only must the Plaintiff show undue hardship to be granted her variances, but she must also show that the variances can be granted without substantial detriment to the public good and that the variances will not substantially impair the intent and the purpose of the zone plan and zoning ordinance (negative criteria). See N.J.S.A. 40:55D-70 and Commons v. Westwood Zoning Board of Adjustment, supra, 81 N.J. at 606-607, 410 A.2d 1138.
In Chirichello v. Monmouth Zoning Bd. of Adjustment, 78 N.J. 544, 397 A.2d 646 (1979), the Court held that there were some indicia shown in that case that the granting of the variance would not substantially impair the zone plan or ordinance. The Court indicated that the applicant was building a single family home in a residential zone, which complied with all other setback requirements, the frontage would not be less than the frontage of the *234 other houses on the same street and the style would be similar to the other homes. Id. at 559, 397 A.2d 646.
Here, plaintiff proposes to build a single family home whose design and size will be in keeping with the neighborhood and will comply with the side yard and setback requirements. There was credible evidence of other undersized lots in the neighborhood which would show that this lot is not peculiar to the neighborhood. The plaintiff's expert testified that there were approximately 35 undersized lots within a three block radius. The expert's opinion presented by the objectors  that only the four houses on Cleveland Avenue and the property in question, but not Lot 9 (Cusato property) or Lots 5, 6, and 7 (nursery school property) should be considered as part of the neighborhood  is too limited or restrictive and therefore not as persuasive as the plaintiff's expert testimony on the impact to the neighborhood if the variances are granted. It is unreasonable to evaluate the surrounding neighborhood without considering the properties on each side of the plaintiff's lot, and more so where both of these properties either violate bulk (Cusato-deficient depth) or use (nursery school  not permitted use) requirements.
In addition, the record indicates that the proposed home would be only slightly smaller in size to the existing homes on Cleveland Avenue and that of itself would not justify the denial of the variance since the size of the house would not violate any traditional zoning purpose of providing for light, air and open space. Commons v. Westwood Zoning Board of Adjustment, supra 81 N.J. at 609, 410 A.2d 1138. In fact, the proposed home would meet all the side yard and setback requirements. Therefore, there would be little, if any, detriment to the public interest if the variances were granted.
Furthermore, there was testimony that this lot has been previously used to dump debris and other waste. This lot, left vacant and used as a dumping ground, will have a negative impact to the appearance, health and safety of the neighborhood. It follows that the variances can be granted without substantial detriment to *235 the public good. In fact, the granting of the variances will eliminate a substantial detriment to the neighborhood, a debris and other waste dumping ground.
This court finds that the plaintiff did offer competent evidence to satisfy the statutory criteria to be granted the variances requested. Accordingly, the Board's denial of the variances was arbitrary, capricious or unreasonable. The Board's denial of the variances is reversed. Thus, the Borough of Morris Plains' cross-claim as to inverse condemnation becomes moot.
The attorney for the plaintiff will prepare the order in accordance with this decision within the next ten days.