100 N.J. Super. 580 (1968)
242 A.2d 853
JOHN BRANAGAN, MARY BRANAGAN, JOHN WEHMANN, MILDRED WEHMANN, AND EUGENE ABBIATE, PLAINTIFFS-APPELLANTS,
v.
JOHN SCHETTINO, LENORA SCHETTINO, BOARD OF ADJUSTMENT OF THE BOROUGH OF FAIRVIEW, AND JOHN SARTOR. BUILDING INSPECTOR OF THE BOROUGH OF FAIRVIEW, DEFENDANTS-RESPONDENTS.
JOHN WEHMANN, MILDRED WEHMANN, JOHN BRANAGAN, MARY BRANAGAN, AND EUGENE ABBIATE, PLAINTIFFS-RESPONDENTS,
v.
JOHN SCHETTINO, LENORA SCHETTINO, BOARD OF ADJUSTMENT OF THE BOROUGH OF FAIRVIEW, AND JOHN SARTOR, BUILDING INSPECTOR OF THE BOROUGH OF FAIRVIEW, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1968.
Decided May 3, 1968.
*582 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Joseph C. Woodcock, Jr. argued the cause for plaintiffs (Messrs. Hart, Mandis, Rathe & Woodcock, attorneys).
Mr. Allan H. Klinger argued the cause for defendants Schettino (Messrs. Calissi, Gelman, Cuccio & Klinger, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
These are two appeals, consolidated for argument, involving separate actions of the Board of Adjustment of Fairview in reference to the same property. In No. A-42-67, referred to hereinafter as the Branagan case, the Law Division, Bergen County, affirmed the grant of a "hardship" variance by the board under N.J.S.A. 40:55-39(c). in favor of the Schettinos, owners of a 25' x 112' lot, for the erection of a two-family dwelling thereon. In No. A-446-66, hereinafter denominated the *583 Wehmann case, the Law Division, prior to its decision of the Branagan case, had reversed the board of adjustment in respect of its ruling, in an appeal brought under N.J.S.A. 40:55-39(a). from an adverse decision by the building inspector, that the Schettinos had the right, under an exemption based upon section 8 of the 1959 amendment to the borough's zoning ordinance, to build the two-family house on the lot. The court construed that section against the claimed right of construction.
Certain facts stipulated or proved are material to resolution of both appeals.
In May 1965 the Schettinos purchased from one Schwarzenbach three contiguous lots, each 25' x 112', numbered, reading from west to east on an old filed map, 25, 26 and 27. The lots front on Prospect Avenue and lot 25 abuts Cottage Place at the northeasterly corner of the intersection of these streets. The deed of conveyance referred to and described lots 25 and 26 as a parcel separate from lot 27, as follows:
"* * * [W]hich two (2) lots, plots, tracts or parcels of land hereby intended to be described and conveyed together forming a plot of tract of land Fifty (50) feet in width, front and rear, with a depth of One Hundred and Twelve (112) feet on each side and throughout, and situated at the Northeasterly corner of Cottage Street and Prospect Avenue * * *."
A 60-year-old dwelling stood on the middle lot, 26. At the rear of lots 26 and 25 there was an old structure, used as a garage for the dwelling on lot 26, which occupied portions of both lots, with its entrance facing Cottage Place. On the rear of lot 27 was a small storage shed.
The area where the property is situated has for some time been zoned for two-family residential occupancy. Section 5 of the zoning ordinance prior to the March 24, 1959 amendment provided:
"Lot area per family: No dwelling or apartment house shall hereafter be erected or altered to accommodate or make provision for more than 2 families to each 2,500 square feet of lot area, provided *584 that any plot existing at the time of the passage of this Act, may be built upon for dwelling purposes."
On March 24, 1959 section 5 was amended to read:
"`Lot Area Per Family' No dwelling shall hereafter be erected or altered to accommodate or make provisions for more than two families to each four thousand (4,000) feet of lot area. (A lot having a frontage of 40 feet and a depth of 100 feet shall be deemed to be conforming.)"
At the same time section 8 was added, reading:
"Section 8. Any existing single vacant lot or plot of land which is deficient in size and area to the conforming provisions and requirements of lot size and area as herein set forth and defined, shall after the passage of this Ordinance be exempt from the provisions and requirements so set forth herein, and a permitted building or structure may be erected thereon provided that the said lot or plot shall contain not less than 2500 square feet of lot area as previously required by the Ordinance of which this Ordinance is amendatory thereof and supplemental thereto. For the purpose hereof, any lot or plot which stands alone and is singularly described, or any two lots or plots which do not face the same street, although held or described together, shall be considered separate single lots or plots. All other lots or plots which either singularly or together conform to the provisions and requirements of a conforming lot size and area, shall not be reduced in any manner, in width, depth, or area, so as to violate the said conforming lot size and area herein set forth and defined."
As will appear, the Wehmann case involves the question whether the foregoing section exempts lot 25 from the 4,000 square-foot and 40 front-foot requirements of the ordinance.
It appears from an opinion in another Law Division case rendered by a different Bergen County judge, dated September 17, 1965 (included in the Schettinos' appendix), that the Schettinos' grantor had obtained a building permit for construction of a two-family dwelling on lot 27 May 10, 1965 (inadvertently indicated in the opinion as 1967) on the basis of section 8, quoted above. On complaint of some neighbors when construction began, the permit was revoked, but the Schettinos were successful, in the action mentioned above, in securing a determination that they had the right *585 to build under section 8. They have since constructed the two-family house on lot 27 and have sold it to others.
Early in 1966 the Schettinos sold the middle lot, 26, to their uncle, Frank Trinchese. The bona fides of this sale has not been inquired into below, but it is of interest that, so far as appears, the encroachment of the garage over onto lot 25, with access across that lot from Cottage Place, presented no obstacle to the transaction.
On April 18, 1966 the Schettinos applied to the building inspector for a permit to build a two-family dwelling on lot 25. This was denied because the plot was undersized. An appeal to the Board of Adjustment resulted in a reversal in June 1966 on the basis of Section 8 and a direction for the permit to issue. Schettino promptly began construction and continued until completion of the building notwithstanding the institution of the Wehmann action in the Law Division on July 5, 1966. On November 29, 1966 the Law Division reversed the decision of the Board of Adjustment, holding that Section 8 did not authorize the exemption of lot 25 from the minimum area requirements.
The Schettinos appealed to this court from the last-mentioned judgment and also applied to the Board of Adjustment for a variance under N.J.S.A. 40:55-39(c). After a hearing, the Board granted a variance on a verbal resolution "that the writing of the ordinance created a hardship on the * * * owner at the passing of the ordinance and subsequent owners"; that there would be no substantial detriment; the building would be an asset to the area, and it would not substantially affect the zone plan of Fairview. However, this ruling was conditioned upon the removal of the garage from the rear of lots 25 and 26, a condition promptly assented to by the Schettinos at the hearing. (Whether the assent of Trinchese was obtained does not appear.)
On complaint by action in the Superior Court by the neighbor-plaintiffs in the Branagan case, the action of the Board of Adjustment was affirmed.

*586 I
We first consider the validity of the judgment in the Wehmann case. We agree with that determination. Section 8 specifies for exemption from the minimum lot size requirements "any single vacant lot or plot * * *." Lot 25 was not vacant. There was a garage encroaching upon it. Lots 25 and 26 were an integrated parcel as held and used. Lot 25 was not only the site of part of the garage which served a use auxiliary to the dwelling on lot 26, but it furnished street access to and from that garage, whether access was via Cottage Place, as is inferable from the proofs, or via Prospect Street.
That Section 8 did not in such circumstances contemplate an exemption for lot 25 is left free from any doubt by its last sentence:
"All other lots or plots which either singularly or together conform to the provisions and requirements of a conforming lot size and area shall not be reduced in any manner * * * so as to violate the said conforming lot size and area."
It seems to us that the conveyance to Trinchese did precisely what this sentence forbade as a means of turning an existing, conforming 50-foot plot into two nonconforming 25-foot plots, for the profit of the owner and to the derogation of the intent of the ordinance.

II
In relation to the Branagan case, we pass the obvious deficiency of the oral resolution of the Board in granting the paragraph (c). variance, in omitting any findings of fact in support of the affirmative conclusion of hardship. There is, moreover, a notable failure to resolve disputes in the testimony as to whether there were any other two-family houses on 25-foot lots in the area near the subject property. That fact has a bearing on the merits of the Board's conclusion *587 that the negative criteria of the omnibus clause of N.J.S.A. 40:55-39 were met.
We are satisfied, as a matter of law, that the record before the Board cannot support a variance under N.J.S.A. 40: 55-39(c) in respect of the necessary affirmative showing of hardship. In Griffin Const. Corp. v. Board of Adjustment of Tp. of Teaneck, 85 N.J. Super. 472, 477 (App. Div. 1964), certification denied 44 N.J. 408 (1965), we distinguished the case there presented from such a one as we have here when we said:
"* * * Where an original owner would be entitled to a variance under a specific set of facts, any successor in title is ordinarily also entitled to such a variance, providing that no owner in the chain of title since the adoption of the zoning restriction has done anything to create the condition for which relief by variance is sought." (Emphasis added)
Applying the rationale of the foregoing to the instant case, it must be concluded: (1) Schwarzenbach, the grantor to the Schettinos, had no right to such a variance as was here granted upon and after adoption of the zoning amendment in 1959; (2) the Schettinos could stand in no better stead than Schwarzenbach upon their purchase in 1965, and (3) to the extent that lot 25 could arguably be deemed an isolated lot after the conveyance to Trinchese of lot 26, that condition is obviously a consequence of the Schettinos' own creation. Schwarzenbach had no right to a variance from the 4000 square foot requirement for two-family dwellings for lot 25 upon amendment of the ordinance as it was then being used as a parcel integrated with lot 26, in common ownership, to provide garaging and vehicular access for the benefit of the dwelling on lot 26. The two lots as thus held and used as an entirety conformed with the amended zoning policy for a minimum lot area of 4,000 square feet. Even the deed description accords with that concept. The Schettinos can stand in no better position than their grantor. Under these circumstances, to allow the *588 variance for lot 25 after the voluntary severance of common title by act of the Schettinos was to subserve a purely private economic interest at the expense of the public interest in the maintenance of the integrity of the zoning plan. This represented an abuse of the discretionary power of the Board of Adjustment under the statute and cannot be upheld. Distinguish the factual situation in Griffin Const. Corp. v. Board of Adjustment of Tp. of Teaneck, supra.
There being no sound basis for application of the affirmative "hardship" criteria of the statute, we need not expressly determine the merits of the generalized conclusion of the Board, in the tenor of the statutory language, of absence of violation of the negative criteria, i.e., no substantial detriment to the public good or to the zone scheme and plan. In this regard, while the defendant Schettino gave general testimony that there were other two-family homes on 25-foot lots "in the area" (controverted by plaintiffs' proofs), specific information from the tax records furnished this court by the parties after oral argument indicates no such instances (aside from the variances granted the Schettinos on lots 25 and 27) except one in Tax Block 76 (the locus in quo is in Block 75) on Fairview Avenue, more than two blocks from the subject property, and a number on Sedore Avenue and Burdette Place, even further away, in Block 77D. The immediate area in the two-family zone seems to have all been developed on substantially larger lots, with one-and two - family homes predominating. There are garden apartments on Fairview Avenue in a different zoning district and a few nonconforming commercial uses. There is no evidence in the case to support the Board finding that construction of the two-family building on the subject lot would be "an asset" to the area. For reasons stated above, the variance inherently militated against the revised 1959 upgrading zoning policy of the municipality without the justification of a true "hardship" to the owner.

*589 III
There remains for determination an issue raised in the pleadings and pretrial order in the Branagan case as to whether, assuming the invalidity of both decisions of the board of adjustment as declared above, the doctrine of estoppel or relative hardship is a defense against plaintiffs' demand in the Branagan complaint that the Schettinos be ordered to bring their property into compliance with the ordinance. This relief would obviously entail a removal of the now-completed building from lot 25. For the principles which are or may be pertinent to these issues see Jantausch v. Borough of Verona, 41 N.J. Super. 89, 93-95 (Law Div. 1956), affirmed 24 N.J. 326, 330 (1957); cf. Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461 (App. Div. 1964), certification denied 43 N.J. 353 (1964).
No proofs were taken before the Law Division in relation to this issue, but the court decided it summarily against the Schettinos on the basis of certain proofs relative to the question adduced before the Board of Adjustment. Little or no attention is given the point in the briefs before us.
The proofs mentioned were improperly taken before the Board of Adjustment as the issue of estoppel was not one for that agency in a N.J.S.A. 40:55-39c. proceeding. Jantausch v. Borough of Verona, supra, 41 N.J. Super., at p. 93. The question presented is not an easy one, and the Law Division should have taken proofs on it before deciding it. For the factors which are pertinent, and as to which full findings of fact by the trial court are a requisite to conclusions of law, see the Jantausch and Sautto cases cited above, and others in that area of the law.
The judgment in the Wehmann case is affirmed. The judgment in the Branagan case is reversed; the affirmance therein of the grant of variance is set aside; and the cause is remanded to the Law Division for a trial only of the issues of estoppel and relative hardship. Final judgment should be entered thereafter after full findings of fact and conclusions *590 of law. We do not retain jurisdiction. Costs on these appeals to plaintiffs in both cases.