245 N.J. Super. 453 (1991)
586 A.2d 262
MICHAEL DALTON, MAHVASH DALTON, YAGHOUB RABBANI AND TALAT RABBANI, PLAINTIFFS-APPELLANTS,
v.
OCEAN TOWNSHIP ZONING BOARD OF ADJUSTMENT AND THE MUNICIPAL CORPORATION OF OCEAN TOWNSHIP, A NEW JERSEY MUNICIPALITY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1990.
Decided January 22, 1991.
*456 Before Judges LONG, R.S. COHEN and STERN.
Thomas D. McCloskey argued the cause for appellants (Sauer, McCloskey & Del Mauro, attorneys, Thomas D. McCloskey of counsel, Thomas D. McCloskey and Richard J. Giannone on the brief).
Mark A. Steinberg argued the cause for respondent Ocean Township Zoning Board of Adjustment (Steinberg and Fellenz, attorneys, Mark A. Steinberg on the brief).
*457 Dennis M. Crawford argued the cause for respondent The Municipal Corporation of Ocean Township (Crawford & Hirsch, attorneys, Dennis M. Crawford of counsel and on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Plaintiffs Rabbani[1] bought a lot in 1987 for the purpose of building a home. They knew it was 50 X 100 feet, or 5,000 square feet, located in an R-3 zone which required a minimum of 18,750 square feet, a minimum lot width of 125 feet, and a minimum depth of 125 feet. The zoning ordinance also contained lot coverage, minimum front and rear setback and side-yard limits which an ordinary house could not satisfy on plaintiffs' lot, identified as number 19.[2] Plaintiffs bought the lot for $32,000, or a little less than half of its value as a buildable lot.
Plaintiffs applied to the Board of Adjustment for hardship variances from a wide range of bulk and dimensional requirements of the zoning ordinance. They were turned down on the ground that the lot-size hardships were self-created. They then filed suit against the Township and the Board of Adjustment, taking now the position that their non-conforming lot was "grandfathered" by a zoning ordinance provision. If not, plaintiffs alternatively contended, the Board erroneously denied the variances they sought.
The Law Division ruled that the grandfather clause of the ordinance did not pertain to plaintiffs' lot 19, and that plaintiffs were not entitled to the variances. Plaintiffs then appealed to this court, and we now affirm.
Lot 19 was created in 1926 in a subdivision, largely of 50 X 100 foot lots, called Hollywood Manor, in the Elberon section of *458 Ocean Township. The lot met the minimum size requirements of the then effective zoning ordinance. The subdivision was filed in the Office of the Monmouth County Clerk's office under the old Map Act. R.S. 46:23-1 et seq. (repealed).
Lots 17 and 18, which adjoin lot 19 on the same street, were purchased by Peter Arnold and his wife in 1945. Lot 19 was bought by one Lasher in 1956. In 1974, Lasher contracted to sell lot 19 to a builder for $3,500, conditioned on obtaining a variance to build on the by-then-undersized lot. Arnold, who lived in a house on lots 17 and 18, offered $3,500 to buy lot 19 in order to prevent anyone from building there. After the variance application was denied, Arnold's offer was accepted and Arnold became the owner in 1974. He did no building and made no improvements. The municipality assessed lot 19 separately to Arnold, and assessed lots 17 and 18 to him as a unit.
In 1978, Arnold, now widowed, conveyed lots 17 and 18 to his daughter, retaining lot 19. She conveyed to the present owner, a few months later. Together, lots 17 and 18 were 100 by 100 feet, then and now undersized as to area, width and depth.
In 1987, Arnold sold lot 19 to plaintiffs for $32,000. The sale was without buildability conditions. Plaintiffs knew the lot was undersized and required variances to permit erection of the single-family house they planned. Before the variance hearing, they offered unsuccessfully to sell to both adjoining landowners. They never got to talk price with them, but had in mind at least $60,000. Their appraiser testified at the Board hearing that, with the variances needed to build, the lot was worth $65,000.[3]
*459 Plaintiffs' first argument is that the "grandfather" provision of the Ocean Township Zoning Ordinance requires that they be given permission to build on lot 19 without a variance:
Additionally, nothing contained in this chapter shall prevent a single-family residence from being erected on a lot within a recorded subdivision approved by the planning board of the Township of Ocean prior to the effective date of this chapter or affect the placement of the structure on said lot providing said lot meets the lot area requirements of the ordinance in effect at the time of said subdivision approval and further, providing that the structure itself does not encroach on any front, rear or side yard setback requirements of the ordinance in effect at the time of said subdivision approval, and further providing that the subdivision approval has not lapsed either by way of statute, ordinance, or action of the township.
The problem with plaintiffs' argument is that the ordinance protects against zoning upgrades only those lots "within a recorded subdivision approved by the planning board ... prior to the effective date of this chapter." At the time this 1926 subdivision was filed, there was no planning board in the municipality or, indeed, in any New Jersey municipality.
Three arguments may be raised against the conclusion that only lots approved by the planning board are protected. The first is that the municipality did not intend that limitation. But the language plainly makes the distinction, one which was created, presumably consciously, by amendment of a provision otherwise inherited from predecessor ordinances. Second, plaintiffs argue that the distinction is not a sensible one that the Township would have wanted to make. Not so. Ocean Township has had a planning board only since 1975. In 1926, Ocean Township had an ordinance-created "board of appeal." It did not routinely review subdivisions, but only heard zoning complaints. The Township's decision was to give "grandfather clause" protection against zoning upgrades only to those lots that resulted from the intensive review provided by the modern subdivision approval process, and to require older, more casually created lots to satisfy greater current scrutiny.
The third argument challenges the validity of such a distinction. We have no doubt that a municipality may rationally adopt a "grandfather clause" that automatically protects only *460 lots that have already hurdled modern land planning barriers that earlier subdivisions did not have to encounter. There is nothing irrational about such a classification.
The Law Division held that lot 19 merged with lots 17 and 18 when Arnold bought lot 19, already owning the adjoining lots 17 and 18. We agree. Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967), established the proposition that lots delineated on a map filed under the old Map Act before establishment of a planning board are no longer valid for conveyancing purposes, unless they meet current zoning standards. See Pasaro Builders, Inc. v. Township of Piscataway, 184 N.J. Super. 344, 446 A.2d 187 (App.Div. 1982), appeal dismissed as moot, 93 N.J. 267, 460 A.2d 671 (1983).
In Loechner, the family owned and lived in a house on lots 186, 187 and 188, each 25 X 100 feet. They then bought adjoining lots 189 and 190, thus increasing the total size of their property to 125 X 100 feet, or more than the then required 100 X 100 feet.
After Mr. Loechner died, Mrs. Loechner proposed to sell lots 189 and 190. The Supreme Court held that the sale constituted a subdivision and that the existence of the old lot lines did not immunize the property from the effect of the current statute governing subdivision and the dimensional requirements of the current zoning ordinance. 49 N.J. at 511, 231 A.2d 553; cf. Chirichello v. Zoning Board of Adjustment of Monmouth Beach, 78 N.J. 544, 397 A.2d 646 (1979) (no merger of back to back lots fronting on different streets). But see Bridge v. Neptune Tp. Zoning Bd. of Adjustment, 233 N.J. Super. 587, 559 A.2d 855 (App.Div. 1989) (merger of back to back lots fronting on different streets if a house is built overlapping both lots).
Under Loechner, therefore, adjoining Map Act lots fronting on the same street in single ownership ordinarily merge and are subject to a zoning upgrade of dimensional minima. Conveyance of a portion that would result in one or *461 more undersized lots under current zoning standards is a subdivision and ordinarily requires the grant of a variance.
Plaintiffs seek to avoid application of the merger doctrine on the thesis that, because combined lots 17, 18 and 19 do not meet current lot size requirements, it is impossible to fulfill the purpose of merger, that is, to make conforming lots out of adjacent undersized lots. We disagree with that approach. The purpose of the merger doctrine is fulfilled, and the doctrine should therefore apply, not only where the result is a conforming lot but also the resulting parcel more nearly meets current zoning standards. The combined lot need not meet all of the current standards.
The relevance of the merger of lots 17, 18 and 19 in Arnold's title is this: In 1978, when Arnold conveyed lots 17 and 18 to his daughter, lot 19 was a part of a nearly conforming parcel of 15,000 square feet. The separate conveyance of lots 17 and 18 was illegal because it subdivided the parcel into two new lots, both of which were not only nonconforming but substantially more nonconforming than the merged 150 X 100 parcel.
Because merged lots 17, 18 and 19 constituted one parcel, the 1978 conveyance was a subdivision, which is defined in the Municipal Land Use Law:
"Subdivision" means the division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development. The following shall not be considered subdivisions within the meaning of this act, if no new streets are created: (1) divisions of land found by the planning board or subdivision committee thereof appointed by the chairman to be for agricultural purposes where all resulting parcels are 5 acres or larger in size, (2) divisions of property by testamentary or intestate provisions, (3) divisions of property upon court order including but not limited to judgments of foreclosure, (4) consolidation of existing lots by deed or other recorded instrument and (5) the conveyance of one or more adjoining lots, tracts or parcels of land, owned by the same person or persons and all of which are found and certified by the administrative officer to conform to the requirements of the municipal development regulations and are shown and designated as separate lots, tracts or parcels on the tax map or atlas of the municipality. The term "subdivision" shall also include the term "resubdivision." [N.J.S.A. 40:55D-7].
*462 The result is that the 1978 sale should not have taken place without subdivision approval by the planning board. The statute also provides for the consequences of a sale without required subdivision approval:
If, before final subdivision approval has been granted, any person transfers or sells or agrees to transfer or sell, except pursuant to an agreement expressly conditioned on final subdivision approval, as owner or agent, any land which forms a part of a subdivision for which municipal approval is required by ordinance pursuant to this act, such person shall be subject to a penalty not to exceed $1,000.00, and each lot disposition so made may be deemed a separate violation.
In addition to the foregoing, the municipality may institute and maintain a civil action:
a. For injunctive relief; and
b. To set aside and invalidate any conveyance made pursuant to such a contract of sale if a certificate of compliance has not been issued in accordance with section 44 of this act, but only if the municipality (1) has a planning board and (2) has adopted by ordinance standards and procedures in accordance with section 29 of this act.
* * * * * * * *
Any such action must be brought within 2 years after the date of the recording of the instrument of transfer, sale or conveyance of said land or within 6 years, if unrecorded. [N.J.S.A. 40:55D-55].
Arnold was subject to a fine of $1,000 for transferring lots 17 and 18 in 1978 because they were "part of a subdivision for which municipal approval is required...." Not because they were part of the 1926 subdivision, but because they were part of the subdivision of merged lots 17, 18, and 19. More significantly, the Township could have instituted a civil action within two years after the deed was recorded to set aside the conveyance.
The Township took no such action against Arnold. Its failure to do so does not, however, convert lot 19 into a conforming lot or otherwise validate it for development purposes. It merely bars the Township from instituting a suit to set aside the deed at a time remote from the conveyance. Plaintiffs argue, however, that the Township's failure to act estops it from invoking the merger doctrine and arguing that plaintiffs' hardship was self-created.
*463 We could not fairly estop the Township in such a situation. The county recording officer has the duty to send an abstract of every filed deed promptly to the municipal tax assessor, collector or other person having custody of the assessment records. N.J.S.A. 54:4-31. The abstract must contain the names of the grantor and grantee and the description of the property set forth in the deed. The requirement is a part of the tax laws, not the Municipal Land Use Law. Its purpose is to alert the taxing authorities to the change in ownership. It is possible that wider circulation of the abstract through the municipal offices will bring it to the attention of an official wearing a land-use hat, but it is not guaranteed, and there is nothing to show the Township's land-use people actually knew about Arnold's 1978 deed to his daughter. The enforceability of zoning regulations should not depend on an illegal subdivision's reaching its second birthday before municipal officials notice it.
Plaintiffs argue they bought lot 19 in good faith and without knowledge of the title history which created the merger that bars relief. There are two answers. The first is that their ignorance of the title history does not create a hardship that did not exist before their purchase.
If an owner, who was entitled to a lot-size variance on hardship grounds, sells to a buyer who, like plaintiffs, knows that the lot does not conform, the right to a variance is not lost as a result of the buyer's knowledge. Harrington Glen, Inc. v. Leonia Bd. of Adjustment, 52 N.J. 22, 28, 243 A.2d 233 (1968); see also Wilson v. Mountainside Bor., 42 N.J. 426, 452-453, 201 A.2d 540 (1964). Hardship consists of the nonusability of the property, and not the financial loss to its owners. Nash v. Board of Adjustment of Morris Tp., 96 N.J. 97, 108, 474 A.2d 241 (1984). Conversely, if a prior owner created the hardship, and would therefore not be entitled to a variance, the impediment is not removed by a purchase by a buyer who did not *464 participate in creating the problem. See Branagan v. Schettino, 100 N.J. Super. 580, 587, 242 A.2d 853 (App.Div. 1968).
In Chirichello, supra, the Supreme Court discussed two fact patterns that bear closely on the present case:
In determining whether undue hardship has been shown, it is always appropriate to consider whether the situation was self-created. For example, if the property had had a 100-foot front on Wesley Street with the same depth and therefore the necessary total area, and the owner sold one-half so that the remaining land did not meet the minimum requirements, we would say the owner created the condition and therefore relief would not be warranted. Branagan v. Schettino, 100 N.J. Super. 580 [242 A.2d 853] (App.Div. 1968). Or, if the owner of a 50-foot-front lot had purchased the adjoining 50-foot lot so that the entire piece was conforming, then the owner would be in the same position as if he had always owned the land with a 100-foot frontage. Upon such an acquisition it may be said absent unusual circumstances that for the purpose of the zoning ordinance there had been a merger and that a later sale of a part of the tract which caused nonconformity would result in a hardship of his own doing. Cf. Branagan v. Schettino, supra at 586 [242 A.2d 853]. [78 N.J. at 553, 397 A.2d 646].
Plainly, if Arnold had sought a variance, his own creation of the problem would have barred relief. Bove v. Board of Adjustment of Emerson Borough, 100 N.J. Super. 95, 241 A.2d 252 (App.Div. 1968), is further authority. There we upheld the denial of a variance to build on an undersized parcel. Plaintiffs owned four contiguous lots with a total of 106.62 feet on High Street and a depth of 100 feet. Each lot was 25 feet wide except corner lot 39, which was 31.62 feet. They bought lots 36 and 37 in 1939, lot 39 in 1949, and lot 38 in 1953. Plaintiffs built their home on lots 36 and 37. The 1959 zoning ordinance required frontage of 85 feet for a corner lot with 8500 square feet of area. Since before 1949, the ordinance required 75 feet frontage for interior lots.
In 1967, plaintiffs sought a variance to build a house on lots 38 and 39, with total frontage of 56.62 feet. We found reasonable the refusal of the Board of Adjustment to permit the owners of what had become a conforming lot to create from it two non-conforming lots. See id. at 101-102, 241 A.2d 252.
The second answer to plaintiffs' claim of innocence is that they knew there was a problem and could have investigated it *465 more fully. Instead of buying unconditionally, knowing that using the lot required relief from current zoning requirements, they could have insisted on a conditional contract. They could have obtained representations from Arnold about his prior ownership of adjoining land. They could have sought a certificate from the municipal clerk under N.J.S.A. 40:55D-56. They could have searched the title of the adjoining parcels for grantors in lot 19's title chain.
We do not say that these extra steps would have been free of cost or that, if plaintiffs had taken them and somehow not have turned up the merger problem, their good faith diligence would have changed the result of this litigation. What we say is that plaintiffs could have protected themselves. An isolated undersized lot in a Map Act subdivision is a problem parcel. One can choose to buy it at a knock-down price, and take one's chances, or thoroughly investigate its history before the purchase.
Plaintiffs' complaint had a second count. It was for inverse condemnation in the event they lost on the appeal from the variance denial. Like the Law Division's judgment, our affirmance[4] leaves that count undecided, and we express no views about it in remanding it to the Law Division. We also express no views on the question whether plaintiffs have any cause of action against Arnold.
NOTES
[1] Plaintiffs Dalton are daughter and son-in-law of plaintiffs Rabbani. Although the Daltons were the applicants for the variance, the proposed home was for the Rabbanis. This opinion hereafter treats plaintiffs as a group.
[2] For this opinion we use a simplified lot designation system.
[3] In order to dissipate the hardship created by an undersized lot, the offer by the adjoining property owner must be the fair value of the lot with the necessary variances. Nash v. Board of Adjustment of Morris Tp., 96 N.J. 97, 107, 474 A.2d 241 (1984).
[4] Because the second count was not disposed of, this is an interlocutory appeal. We therefore grant leave to appeal sua sponte.