692 A.2d 1012

DENNIS M. SCARDIGLI, M.D., PLAINTIFF–APPELLANT, v. BOR-
OUGH OF HADDONFIELD ZONING BOARD OF ADJUSTMENT;
VIRGINIA CUMMINS; NASHAT R. KALLEENY AND CLAIRE
A. KALLEENY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 26, 1997—Decided April 30, 1997.

Before Judges BAIME and PAUL G. LEVY.

*Donald P. Craig* argued the cause for appellant.

*Daniel J. DiStasi* argued the cause for respondent Borough of Haddonfield Zoning Board of Adjustment (*Green, Lundgren & Ryan, P.C.*, attorneys; *William L. Lundgren, III*, on the brief).

*Peter M. Rhodes* argued the cause for respondents Virginia Cummins, Nashat R. Kalleeny and Claire A. Kalleeny (*Cahill, Wilinski* and *Cahill*, attorneys; *Mr. Rhodes*, of counsel; *Douglas M. Joyce*, on the brief).

PAUL G. LEVY, J.A.D.

When the board of adjustment granted certain bulk variances to the contract purchasers of an undersized lot within 200 feet of plaintiff's residence, permitting construction of a house on that lot, plaintiff brought an action in lieu of prerogative writs in the Law Division. The judge ruled for the defendants (the lot owner, the owner's contract purchaser and the board) and plaintiff appeals.

Virginia Cummins is the owner of Lot 8, the property for which the variances were sought. Applicants Nashat and Claire Kalleeny are the prospective purchasers of Lot 8, contingent upon the granting of bulk variances for lot area and lot depth. The property's history is as follows: In 1977, the owner of Lot 6, Kelly,

purchased Lot 8 from Davidson, owner of Lot 2. Kelly constructed a tennis court on Lot 8, which slightly extended over the property line separating Lots 8 and 6. In 1979, Kelly decided to sell the tennis court lot (Lot 8) to Cummins, the owner of Lot 9. He was granted a minor subdivision by the planning board, to add a small piece of Lot 6 to Lot 8, so the tennis court would be totally contained on Lot 8. The planning board also granted certain bulk variances regarding side yard and set back requirements for Lot 6. After the 1979 subdivision, Kelly sold the new Lot 8 to Cummins.

Sometime during the next fifteen years,[1] the zoning ordinance was amended. In the R–2 Residential District, where the subject lots were located, the new minimum lot size was increased to 15,000 square feet, the new minimum depth was 150 feet and the new minimum front and rear yard setbacks were each forty feet. The amendments added a definition of "lot" as "[a]ny parcel, tract or area of land established by a subdivision plat or deed of record, ... *except that for the purposes of this Ordinance, contiguous undersized lots under one ownership shall be considered to be one lot....*" (emphasis added).

After the enactment of these amendments, Cummins' husband died and she decided to sell her property. Through her attorney, she requested a legal opinion from the Borough of Haddonfield as to whether she could sell the two lots separately. On December 8, 1992, the planning board's attorney responded to Cummins' attorney, advising that "the two adjacent lots now owned by Mrs. Cummins have not merged, even though Lot 8 is now undersized for this zone as a result of the most recent zoning ordinance amendment." In fact, both lots were undersized and therefore came within the coverage of the ordinance. Noting that Lot 8 had been created by a subdivision approved by the planning board in 1979, and treated and taxed as a separate independent lot since

---

[1] The record does not reveal the date of the adoption of the pertinent amendments to the local zoning ordinance.

then, the board's attorney relied on Cox, *New Jersey Zoning and Land Use Administration,* ch. 12–2.3, 210 (1992). He cautioned only that any owner of Lot 8 wishing to construct a house would need approval by the board of adjustment for whatever bulk variances were required.

Relying on that opinion, and presumably on her own attorney's concurrence, Cummins sold the smaller Lot 9 to Roy C. Perry in September 1993.[2] Shortly thereafter, in mid–1994, Cummins contracted to sell Lot 8 to the Kalleenys, contingent on any required bulk variances. The Kalleenys, as contract purchasers, applied for the bulk variances on June 1, 1994. The application proposed construction of a new residence, replacing the tennis court, on a lot containing 13,849 square feet (only 103 feet deep) and with setbacks of twenty-eight feet in the front yard and twenty-seven feet in the rear. After a series of three hearings, the board "conclude[d] that denial of the requested variances would cause practical and unusual difficulties and hardship upon the applicants and owner of the property which justify the granting of the requested variances." Further, "the requested variances can be granted without being detrimental to the public good, nor will they violate the spirit and intent of the Zoning Ordinance and the Zone Plan."

At the trial in the Law Division, the judge expressed the thought that the "doctrine of merger" applied, but the municipality was estopped from denying Cummins the right to sell the lot because she relied on the planning board attorney's letter opinion and sold the lots separately. He also found "the requested ... variances seem to be relatively minor and will go a long way in eliminating the perceived hardship to the owner ... to permit her contracted purchaser to build a home consistent with those homes which are in that particular area." Finally, the judge concluded the grant of the variances was appropriate because the board

---

[2] Neither the plaintiff nor the municipality has questioned the validity of this conveyance.

"considered the neighborhood, its character, its value, the impact that the variance would have upon the existing neighborhood and they concluded no negative impact." Disregarding the lack of a transcript of the December meeting of the board of adjustment, the judge stated there were adequate facts in the transcript of the first meeting to support the board's decision.

On appeal, plaintiff challenges the result in the Law Division, contending: (1) the doctrine of equitable estoppel was inapplicable because the planning board attorney lacked authority to issue an opinion interpreting the zoning ordinance; (2) proceeding without a transcript of the final board meeting violated *N.J.S.A.* 40:55D–10(f) and a remand to the board of adjustment was required; (3) the board's vote was improper because one of its members voting at the third meeting had been absent from the first two meetings; and (4) the grant of the bulk variances was arbitrary, capricious and unreasonable because the record reveals no proof of the need for setback variances.

## I. Estoppel

We agree with plaintiff that the planning board attorney lacked statutory authority to offer his interpretation of the zoning ordinance to a private citizen and thereby bind any municipal agency. The opinion was requested by Cummins' attorney and she, in turn, relied on her attorney's advice. However, the municipality never sought to set aside the subsequent conveyance of Lot 9 to Perry, and it may not do so now as the two-year limit of *N.J.S.A.* 40:55D–55 has passed. That circumstance evidences the official municipal view that Lots 8 and 9 were separate lots and never merged. Otherwise, having conveyed Lot 9 to a bona fide purchaser, Cummins would be left with a lot either zoned into inutility or saleable only to an adjacent landowner, probably at forced sale rates.

A municipality or any of its agencies may be estopped if the circumstances involve reliance on a good faith act of an administrative official, within the ambit of that official duty, which

constitutes an erroneous and debatable interpretation of an ordinance. *See Tp. of Fairfield v. Likanchuk's, Inc.*, 274 *N.J.Super.* 320, 332, 644 *A.2d* 120 (App.Div.1994). When the circumstances lead a landowner to be misled by the "reasonable implications" of municipal action, such as the longtime recognition that Lots 8 and 9 were separate lots, and the legal significance of that (non-merger) is verified by an attorney who is part of the official municipal family, a municipality may be estopped from refusing variance relief based on the concept of self-created hardship arising from a merger of the two lots. "There is in [those] particular circumstances a preclusion in equity and elemental justice against the relief [merger] demanded by plaintiffs." *Summer Cottagers' Assn. of Cape May v. City of Cape May*, 19 *N.J.* 493, 506, 117 *A.2d* 585 (1955).

■ The validity of a forced merger of the lots by operation of law depends on the circumstances under which the lots were created. If the lots were created under the Old Map Act prior to the time a municipality adopted a land subdivision ordinance under the 1953 Municipal Planning Act, the lots are deemed merged, lot lines are ignored and further subdivision is needed to separate them. *See Loechner v. Campoli*, 49 *N.J.* 504, 511–12, 231 *A.2d* 553 (1967); *Ryan v. Bd. of Adj. of Woodbridge Tp.*, 49 *N.J.* 520, 524, 231 *A.2d* 562 (1967). Back-to-back lots created by an old filed map are an exception to the *Loechner* rule. *Chirichello v. Bd. of Adj. of Monmouth Beach*, 78 *N.J.* 544, 554, 397 *A.2d* 646 (1979).

■ Lots created by subdivision under the Municipal Planning Act or the Municipal Land Use Law present different considerations than those created by an old map filing. There is an apparent statutory exception to *Loechner* found in the definition of "subdivision" in *N.J.S.A.* 40:55D–7. There, excluded from the definition, is:

> [t]he conveyance of one or more adjoining lots, tracts or parcels of land, owned by the same person or persons and all of which are found and certified by the administrative officer to conform to the requirements of the municipal development

regulations and are shown and designated as separate lots, tracts, or parcels on the tax map or atlas of the municipality.

Where the owner has not done anything to destroy the separate identity of two lots acquired after a subdivision, buyers of each will have good title without further subdivision approval, and if one is vacant, development may require variances but not subdivision. *See Pribish v. Corbett,* 105 *N.J.Super.* 407, 252 *A.*2d 731 (App.Div. 1969); *see also Bridge v. Neptune Tp. Zon. Bd. of Adj.,* 233 *N.J.Super.* 587, 593, 559 *A.*2d 855 (App.Div.1989) (assemblage of two lots on existing street with house on one and other remaining vacant *may* permit lots to retain their separate identity and not merge). A leading authority advocates that such lots are still recognized as separate lots, not subject to merger by operation of law, and bulk variances needed to develop an empty lot are within the jurisdiction of the board of adjustment.

[W]hen an application comes to a planning board where an owner of property owns two adjoining lots, one of which is improved, and needs yard variances to permit construction on the adjacent lot, it should be initially determined which board has jurisdiction. If the lots were created under the old Old Map Filing Act, presumably the lots have merged and a subdivision is involved which would mean that the matter would be within the jurisdiction of the planning board. On the other hand, if the two adjoining lots had at one time been approved by the planning board, even though they may now be substandard, they are still recognized as separate lots. The doctrine of merger does not apply to them, and therefore the application for bulk variances with respect to the vacant lot would be within the jurisdiction of the zoning board of adjustment.

[Cox, *New Jersey Zoning and Land Use Administration,* ch. 12–2.3, 210–11 (1994).]

Elemental fairness dictates that Cummins be permitted to sell Lot 8 without regard to Lot 9. The sale to Perry was bona fide and should not be invalidated. The fate of Lot 8 depends on the validity of the substantive decisions of the board of adjustment regarding the bulk variances sought. On remand, which we are ordering because the transcribed record of the third hearing was incomplete, *infra,* the judge should not consider that Cummins created her own hardship by selling Lot 9 and leaving Lot 8 as an isolated undersized lot.

## II.   The Incomplete Record

At the end of the initial hearing on July 19, 1994, the applicant was directed to prepare an architectural rendering of the proposed house.   Members of the public asked for additional time to review the rendering and then to present their opposition at the next meeting.   The architectural rendering and the public reaction was considered at the third hearing on December 20, 1994 when the tape recorder malfunctioned.   In the Law Division, the judge said:

> This court finds adequate facts in the first transcript of the record to support the decision made.   Counsel for Scardigli is correct with regard to the legal proposition put concerning the inadequate record.   The recourse that a court would have in that regard would be to return it but this court does not make a finding of inadequacy.   Yes, there may be gaps.   The question becomes, are the gaps of such a magnitude that the court could not conclude there was support for the decision reached.

*N.J.S.A.* 40:55D–10(f) directs the planning board to "provide for the verbatim recording of the proceedings by either stenographer, mechanical or electronic means."   Without such a record, courts are unable to engage in judicial review and ordinarily should remand for further proceedings.   *Carbone v. Planning Bd. of Tp. of Weehawken,* 175 *N.J.Super.* 584, 586, 421 *A.*2d 144 (Law Div.1980) (because the submitted meeting minutes were inadequate and no verbatim record was made, matter remanded to planning board for rehearing); *Lawrence M. Krain Assoc. v. Mayor of Tp. of Maple Shade,* 185 *N.J.Super.* 336, 341, 448 *A.*2d 522 (Law Div.1982)(without verbatim recording of board of adjustment meeting, court could not decide if denial of variance was arbitrary or capricious, and remanded for new hearing on that part of the application).

Here, the typed transcript of what was successfully recorded is only four and one-half pages long, and we cannot ascertain the magnitude of the two gaps from either that transcript or the transcript of the trial in the Law Division.   The trial judge rejected the idea of a remand to the board of adjustment, but he did not consider attempting to reconstruct the record.   We find an analogy in *R.* 1:2–2 which requires verbatim recording of proceed-

ings in the Superior Court, but when stenographic notes have been destroyed or lost before an accurate transcript could be prepared, we have asked trial judges to reconstruct the record. Reconstruction may be done by the judge alone or with the aid of counsel. *See State v. Gaines,* 147 *N.J.Super.* 84, 370 *A.*2d 856 (App.Div.1975), *aff'd o.b. sub nom., State v. Powers,* 72 *N.J.* 346, 370 *A.*2d 854 (1977); *State v. Kozarski,* 143 *N.J.Super.* 12, 362 *A.*2d 598 (App.Div.), *certif. denied,* 71 *N.J.* 532, 366 *A.*2d 687 (1976); *State v. Smith,* 84 *N.J.Super.* 452, 202 *A.*2d 461 (App.Div.), *certif. denied,* 43 *N.J.* 270, 203 *A.*2d 720 (1964).

We infer from the proceedings in the Law Division that the purpose of the third hearing before the board of adjustment was to confirm what had been testified to at the first hearing. Whatever testimony was offered from members of the public in December, as well as the public input at the September hearing, was considered by the board of adjustment in its final determination. That should have been considered by the trial judge as well. Since the sparse record of the December hearing does not reveal anything about the magnitude of the gaps in the record, the judge on remand should attempt to reconstruct the record with the assistance of counsel (*cf., State v. Casimono,* 298 *N.J.Super.* 22, 25, 688 *A.*2d 1093 (App.Div.1997)), or the judge may accept a stipulation of the record from counsel. If the judge finds it is not possible to reconstruct the record with the aid of counsel, he should order the board of adjustment to attempt reconstruction. If that fails, the board should hear testimony anew. From the reconstructed record, the judge should once again consider the trial issues. Reconsideration need not be limited to relief under *N.J.S.A.* 40:55D–70(c)(1), and the judge may also focus on the character of the development of Lot 8 as a community benefit under *N.J.S.A.* 40:55D–70(c)(2). *See Ketcherick v. Bor. of Mountain Lakes,* 256 *N.J.Super.* 647, 657, 607 *A.*2d 1039 (App.Div.1992).

## III. The Propriety of the Vote

At the third board meeting in December 1994, one of the board members, Michael Skinner, voted to approve the variance

although he was not present at the two prior meetings. Plaintiff asserts that pursuant to *N.J.S.A.* 40:55D–10.2, because Skinner never supplied a written certification that he had read the transcript of the two prior meetings, he should not have been permitted to vote. This issue was raised in the Law Division but not addressed by the judge.

The board of adjustment voted to grant the application by a vote of five to two. *N.J.S.A.* 40:55D–9 provides for approval of an application for bulk variances under *N.J.S.A.* 40:55D–70(c) by the vote of a simple majority of a quorum of the board. Skinner's improper vote does not change the ultimate result, and plaintiff has not claimed that Skinner's participation at the December meeting was prejudicial to plaintiff's cause. While it was erroneous to permit Skinner to vote under the circumstances, we conclude the error is harmless.

Reversed and remanded to the Law Division for further proceedings. We do not retain jurisdiction.