**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0133-21

JEROME MASON,

    Plaintiff-Appellant,

v.

TOWNSHIP OF MIDDLETOWN
ZONING BOARD OF
ADJUSTMENT and
TOWNSHIP OF MIDDLETOWN,

    Defendants-Respondents.

_____

Submitted July 19, 2022 – Decided August 10, 2022

Before Judges Sabatino and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0965-19.

Gasiorowski & Holobinko, attorneys for appellant (Ronald S. Gasiorowski, of counsel and on the briefs).

Collins, Vella & Casello, LLC, attorneys for respondent Township of Middletown Zoning Board of Adjustment (Gregory W. Vella, of counsel and on the brief).

Archer & Greiner, PC, attorneys for respondent Township of Middletown (Brian M. Nelson, of counsel; Kira S. Dabby, of counsel and on the brief).

PER CURIAM

Plaintiff Jerome Mason, a builder, purchased an undersized parcel of land with the hope of building a single-family house. He appeals from orders granting summary judgment to defendant the Township of Middletown (Township) and dismissing his claims against defendant the Township's Zoning Board of Adjustment (Zoning Board). The trial court granted summary judgment to the Township, holding that plaintiff's property had merged with an adjoining property when the two properties had come under common ownership. The court dismissed the claims against the Zoning Board, holding that the Board had correctly determined that it had no jurisdiction to consider plaintiff's variance application because he was seeking variances on part of a merged property.

We agree with the trial court that plaintiff's parcel had merged with an adjoining property. We, therefore, affirm both orders.

A-0133-21

I.

The material facts concerning the history of the property are not in dispute. We discern those facts from the record, viewing them in the light most favorable to plaintiff, the non-moving party. Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

In 2012, plaintiff purchased a vacant piece of real property located in the Bayshore section of the Township. Plaintiff is a builder, and he purchased the property with the plan to construct a single-family house that he would then sell.

On the Township's tax map, the property is listed as Block 459, Lot 16 (Lot 16 or the Property). Lot 16 is approximately fifty feet wide, 100 feet deep, and consists of just under 5,000 square feet. Lot 16 is in the Township's R-10 zone, which requires residential use with a minimum lot area of 10,000 square feet and a minimum of 100 feet of street frontage. Accordingly, Lot 16 is undersized and has insufficient frontage.

The Bayshore section of the Township was developed in the early 1900s at a time when there were no applicable zoning ordinances or laws. A subdivision map from 1911 shows that the area had been originally developed with numerous lots that had twenty-five feet of street frontage and 100 feet of depth.

3

The Township adopted its first zoning ordinances in 1935 and established a planning board in 1954. See Bartlett v. Middletown Twp., 51 N.J. Super. 239, 246 (App. Div. 1958). Eventually, the Township adopted the R-10 zone. Plaintiff has acknowledged that the Township had adopted the R-10 zone before he bought the Property.

Lot 16 is adjacent to Block 459, Lot 9 (Lot 9), and both lots front on the same residential street. Lot 9 has 125 feet of street frontage, is 100 feet deep, covers more than 10,000 square feet of area, and is developed with a single-family house.

In 1982, the owners of Lot 9, Gary and Ivonne Thorne, purchased Lot 16. In 2006, the Thornes divorced, and the entire property (Lots 9 and 16) was conveyed to Gary Thorne. Gary Thorne died in December 2010, and the executor of his estate, his son, listed Lots 9 and 16 for separate sale.

In 2012, plaintiff purchased Lot 16. The purchase contract was conditioned on plaintiff obtaining a building permit from the Township. Plaintiff, however, waived that condition and purchased Lot 16 without a building permit. Before plaintiff closed on the purchase, his attorney was advised by the title company that Lot 16 may have merged with Lot 9 and the

4

attorney should investigate that situation. Apparently, no investigation was conducted.

At approximately the same time that plaintiff purchased Lot 16, another person purchased Lot 9 from the estate. Shortly after those purchases, both plaintiff and the owner of Lot 9 recorded their deeds with the Township. In May 2013, the Township's zoning officer sent plaintiff a letter stating that Lots 9 and 16 "appear to be merged properties," noting that Lot 9 "contains the principal dwelling" and Lot 16 contains "the accessory structures." The letter went on to state: "I am making you aware of this [situation] as the tax records show that you are in ownership of" Lot 16.

Several months later, in December 2013, plaintiff filed an application for a permit to construct a house on Lot 16. In January 2014, the Township zoning officer informed plaintiff that his application was denied because Lot 16 had merged with Lot 9. Plaintiff sought clarification from the Township and the Township's zoning officer responded in a letter explaining that for plaintiff to develop the property, he would need approval of a subdivision of Lot 16 from Lot 9. Plaintiff was, therefore, directed to file an application with the Township's Planning Board.

A-0133-21

Four years later, in April 2018, plaintiff filed an application for a permit to construct a single-family house on Lot 16. The Township's zoning officer denied that application. That same year, plaintiff applied to the Zoning Board for variances to allow him to build a house on Lot 16. In January 2019, after conducting hearings, the Zoning Board determined that it lacked jurisdiction to hear the application because Lot 16 had merged with Lot 9 and plaintiff was filing an application concerning only a portion of the merged property.

In March 2019, plaintiff filed a complaint in lieu of prerogative writs against the Zoning Board. Thereafter, he amended his complaint to add the Township as a defendant. Following a conference with counsel, the trial court bifurcated the case and directed that it would consider the legal issue of lot merger first before addressing the claims against the Zoning Board.

Thereafter, the Township moved for a partial summary judgment to dismiss the claims against it. On April 16, 2021, the trial court issued a written opinion and order granting partial summary judgment in favor of the Township and dismissing plaintiff's claims against the Township. The court held that Lot 16 had merged with Lot 9 and, therefore, plaintiff had no right to receive a building permit for an undersized piece of property, which was part of a larger property that had not been duly subdivided.

6

Thereafter, plaintiff moved for summary judgment against the Zoning Board seeking a remand to the Zoning Board for a hearing on the merits of his application. The Zoning Board opposed that motion. On August 6, 2021, the trial court issued a written opinion and final judgment dismissing plaintiff's claims against the Zoning Board. The trial court held that the Zoning Board had correctly decided that it lacked jurisdiction to hear an application for a variance on part of a merged property. Plaintiff now appeals from the orders dismissing the complaint against the Township and the Zoning Board.

II.

Before us, plaintiff makes three arguments, contending that (1) the trial court erred in holding that Lots 16 and 9 had merged; (2) the Township should be estopped from denying plaintiff a building permit; and (3) the Zoning Board erred in determining that it did not have jurisdiction to consider plaintiff's variance application. Because we conclude that Lots 16 and 9 merged when they came under common ownership, we reject all of plaintiff's arguments and affirm the trial court's orders.

A. Summary Judgment to the Township.

We review a grant of summary judgment de novo and apply the same standard as the trial court. Caraballo v. City of Jersey City Police Dep't, 237

N.J. 255, 264 (2019) (citing RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018)). We will uphold a grant of summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting RSI Bank, 234 N.J. at 472); accord Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Whether parcels of land have merged by operation of law is a legal question that appellate courts review de novo. See Fallone Properties, L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 561 (App. Div. 2004). Moreover, whether a hardship was self-created also involves a legal question. See Egeland v. Zoning Bd. of Adjustment of Twp. of Colts Neck, 405 N.J. Super. 329, 332 (App. Div. 2009). We give substantial deference to a local zoning board's findings of fact, but "it is essential that the board's actions be grounded in evidence in the record." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 196-97 (App. Div. 2009) (quoting Fallone, 369 N.J. Super. at 562).

1.    Merger.

"The term 'merger' is used in zoning law to describe the combination of two or more contiguous lots of substandard size, that are held in common ownership, in order to meet the requirements of a particular zoning regulation." Jock v. Zoning Bd. of Adjustment of the Twp. of Wall, 184 N.J. 562, 578 (2005) (citing Robert M. Anderson, 2 American Law of Zoning § 9.67 (4th ed. 2005)). In effect, when undersized lots come under common ownership, the lots are deemed to be combined to comply with existing zoning laws.  Ibid.; see also Chicalese v. Monroe Twp. Plan. Bd., 334 N.J. Super. 413, 417 (Law Div. 2000). No formal action needs to be taken for the merger to occur; instead, the merger is deemed to happen as a matter of law.  Jock, 184 N.J. at 581 (explaining that "merger takes place as a matter of law where adjacent substandard lots come into common legal title").

The doctrine of merger was recognized over fifty years ago by the New Jersey Supreme Court.  Loechner v. Campoli, 49 N.J. 504, 508 (1967).  In that case, the Court held that when the owner of three undersized lots of real property acquired two more adjacent lots, all five lots became one parcel of land even though they were designated as five separate lots on the original map that created the parcels.  Id. at 508.  Accordingly, the Court held that the subsequent

separation of the two lots, which were vacant, from the remaining three lots, constituted a subdivision that required approval. Id. at 511-12.

"There are a number of recognized exceptions to the merger doctrine." Jock, 184 N.J. at 582. The merger doctrine does not apply to (1) adjoining lots that meet the governing zoning requirements; (2) lots that were approved for subdivision by the governing planning board; or (3) situations where merger would not create a conforming lot because the lots front on different streets (that is, the lots are back-to-back). Id. at 582-83. Moreover, merger applies only to adjacent undersized lots held in common legal title. A merger does not occur based on "equitable ownership" of separately titled property. Id. at 588-89.

If lots have merged, thereafter subdivision approval is necessary before the lots can be separated and developed. Id. at 578. Accordingly, "[c]onveyance of a portion that would result in one or more undersized lots under current zoning standards is a subdivision and ordinarily requires the grant of a variance." Dalton v. Ocean Twp. Zoning Bd. of Adjustment, 245 N.J. Super. 453, 460-61 (App. Div. 1991).

The record here establishes that Lot 16 was an undersized lot in 1982 when it came under common ownership of the Thornes who owned the adjacent Lot 9. Consequently, at that time, Lot 16 merged with Lot 9.

A-0133-21

2.    Estoppel.

Plaintiff argues that the Township should be estopped from denying him a building permit for Lot 16 because the Township took no action to prevent the estate of Gary Thorne from separately selling Lot 16 and Lot 9.  Given the undisputed facts in the record, we reject this estoppel argument.

Equitable estoppel "is a doctrine 'founded in the fundamental duty of fair dealing imposed by law.'"  Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 86 (2012) (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)).  "[T]he doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his [or her] detriment," and is "invoked in the interests of justice, morality and common fairness."  Ibid. (quoting Knorr, 178 N.J. at 178.).  "[T]o establish [an] equitable estoppel, [a party] must show that [the other party] engaged in conduct, either intentionally or under circumstances that induced reliance, and that [the first party] acted or changed [his or her] position to [his or her] detriment."  Knorr, 178 N.J. at 178. "Equitable estoppel may be invoked against a municipality 'where interests of justice, morality and common fairness clearly dictate that course.'"  Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162

N.J. 361, 367 (2000) (quoting Gruber v. Mayor & Twp. Comm. of Raritan, 39 N.J. 1, 13 (1962)).

In considering whether a township should be estopped, it is appropriate to consider whether the person seeking the estoppel can demonstrate a hardship that was not self-created. See Jock, 184 N.J. at 591. Zoning boards have the power to grant a variance from the strict application of land use regulations where those regulations "would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer" or owner of the property. N.J.S.A. 40:55D-70(c)(1). "Undue hardship refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise." Jock, 184 N.J. at 590.

The availability of a hardship variance, however, depends on how the hardship was created. Ibid. "Where the hardship has been created by the applicant, or a predecessor in title, relief will normally be denied." Id. at 591 (citing Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 606 (1980)). "[S]elf-created hardship requires an affirmative action by the landowner or the predecessor in title that brings an otherwise conforming property into non-conformity." Ibid.; see also Barnes Land Corp. v. Bd. of Adjustment of Twp. of Wyckoff, 174 N.J. Super. 301, 304 (App. Div. 1980)

12

(finding plaintiff's hardship self-created because its predecessor-in-title had divided conforming property); Branagan v. Schettino, 100 N.J. Super. 580, 587 (App. Div. 1968) (holding where predecessor in title owned two adjoining, integrated lots, which together conformed with requirements of zoning ordinance, and thereafter sold one, hardship was self-created).

The doctrine of equitable estoppel can operate to preclude a finding of self-created hardship. Simeone v. Zoning Bd. of Twp. of E. Hanover, 377 N.J. Super. 417, 423 (App. Div. 2005). "[M]unicipal action taken after the course of many years, which misleads a property owner as to the status of its property, may estop[] the municipality from refusing to grant a variance on the basis of self-created hardship." Ibid. (citing Scardigli v. Borough of Haddonfield Zoning Bd. of Adjustment, 300 N.J. Super. 314, 319-20 (App. Div. 1997)).

The material undisputed facts in this record do not establish the grounds for estopping the Township. Instead, the facts show that plaintiff purchased Lot 16 despite the opportunity to investigate whether Lot 16 had merged with Lot 9 before he made the purchase. Plaintiff's sale contract with the estate was contingent on him obtaining a building permit. Instead of seeking that permit before closing, plaintiff elected to waive that contingency and purchase Lot 16 without the building permit. Moreover, plaintiff did not contact the Township

13

before purchasing Lot 16 to determine whether the lot could be developed separately.

In addition, plaintiff's title company put his closing attorney on notice of the merger of Lot 16 and Lot 9, but that issue was not investigated before plaintiff closed on Lot 16. At his deposition, plaintiff testified that he did not recall his lawyer notifying him of the merger issue.[1] The relevant issue for finding an estoppel, however, is whether the Township took actions on which plaintiff reasonably relied. The record contains no evidence that the Township took any action on which plaintiff could have reasonably relied.

The Township also did not unduly delay acting concerning plaintiff's lot. Within one year of plaintiff purchasing Lot 16, the Township notified him that his property probably had merged with Lot 9. Conveyances contravening subdivision laws can be rescinded by timely action of the municipality. See N.J.S.A. 40:55D-55. Although the Township had the right to challenge the estate's separate sales of Lot 16 and Lot 9, its failure to do so under these facts did not constitute an estoppel. The Municipal Land Use Law does not obligate a municipality to institute a civil action to enjoin or set aside an illegal conveyance. N.J.S.A. 40:55D-55. Moreover, when plaintiff was notified in

---

[1] Plaintiff sued his closing attorney and settled that claim.

2013 by the Township of the merger, he took no action and did not request the Township to challenge the separate sales of his Lot 16 and Lot 9.

Under N.J.S.A. 40:55D-55, a municipality's action to void a conveyance that causes an unapproved subdivision must take place within two years. Fox v. Twp. of W. Milford, 357 N.J. Super. 123, 127 (App. Div. 2003). We have previously concluded that this time limitation does not "validate . . . [the subdivided lot] for development purposes." Ibid. (alterations in original) (quoting Dalton, 245 N.J. Super. at 462). A municipality's planning board may not become aware of a conveyance within that time period, and "the enforceability of the land-use planning laws 'should not depend on an illegal subdivision's reaching its second birthday before municipal officials notice it.'" Id. at 128 (quoting Dalton, 245 N.J. Super. at 463). Given the circumstances of this case, there is no basis for equitable estoppel that would contradict the "strong public policy" represented by the Municipal Land Use Law. Ibid.

B. The Dismissal of the Claims Against the Zoning Board.

In his complaint in lieu of prerogative writs, plaintiff sought to compel the Zoning Board to consider his variance application. After conducting appropriate hearings, the Zoning Board determined that plaintiff was asking for a variance on a portion of property without the consent of the owner of Lot 9. The Zoning

Board also found that plaintiff's application required subdivision approval. Consequently, the Zoning Board dismissed plaintiff's application, finding that it lacked jurisdiction. After determining that Lot 16 and Lot 9 had merged, the trial court held that the Zoning Board had correctly determined it lacked jurisdiction and that the trial court had no legal grounds to compel the Zoning Board to act on plaintiff's application.

The Zoning Board's decision on a variance can be set aside only when arbitrary, capricious, or unreasonable. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002). Section 540-409A (6) of the Land Use Ordinance of the Township provides that all applications before the Zoning Board require an affidavit from the owner if the application is not made by the property owner.

Plaintiff asked the Zoning Board to act on an application on a portion of merged property without the consent of the owner of Lot 9. Accordingly, we agree with the trial court that there are no grounds to compel the Zoning Board to act on plaintiff's variance application and we affirm the dismissal of the complaint in lieu of prerogative writs against the Zoning Board.

Citing to our decision in Scardigli, plaintiff argues that the Zoning Board can hear an application on a lot that came into existence by an improper

16

conveyance even if that lot is undersized. See 300 N.J. Super. at 320-21. Our decision in Scardigli is distinguishable. In Scardigli, we held that the municipality was estopped from contending that the lots had merged. Id. at 319-20. As we have already analyzed, estoppel does not apply under the facts here.

Plaintiff also asserts that he is in a "catch-22" situation because the owner of Lot 9 refuses to consent to a subdivision application. Plaintiff's situation is not a catch-22. Instead, the owner of Lot 9 has an interest in whether the adjoining undersized Lot 16 is developed with a house. As we already analyzed, plaintiff had the opportunity to investigate the merger, but he either consciously chose to go forward with the purchase of Lot 16 or ignored the risk that the lots had merged. Consequently, plaintiff placed himself in his current position and any hardship was self-created.

In summary, we reject plaintiff's arguments, Lots 16 and 9 merged, and we affirm both trial court's orders.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0133-21