**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3452-17T2

LARRY PRICE,

     Plaintiff-Appellant,

v.

OZ HOLDINGS, LLC and
UNION CITY ZONING BOARD
OF ADJUSTMENT,

     Defendants-Respondents.

_____

Argued January 23, 2019– Decided May 22, 2019

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1377-17.

Larry Price, appellant, argued the cause pro se.

Michael S. Goodman argued the cause for respondent OZ Holdings, LLC (M. Goodman & Associates, PC, attorneys; Michael S. Goodman, on the brief).

Gregory F. Kotchick argued the cause for respondent Union City Zoning Board of Adjustment (Durkin &

Durkin, LLC, attorneys; Gregory F. Kotchick, of counsel and on the brief).

PER CURIAM

Plaintiff Larry Price appeals from the Law Division's February 23, 2018 judgment dismissing his complaint in lieu of prerogative writs, which was entered after the trial judge found that defendant Union City Zoning Board of Adjustment (the Board) did not act arbitrarily, capriciously, or unreasonably in granting the zoning relief sought by defendant OZ Holdings, LLC (OZ). The subject applications sought simultaneous subdivision and site plan approval for a lot fronting two perpendicular streets, one in a commercial zone and the other in a residential zone, and then variances for the newly-created lot to allow construction upon it of a three-family home.

On appeal, among other arguments, plaintiff contends that the trial judge's decision should be remanded under Rule 1:7-4 because he did not address the critical issue of whether the hardship relied upon by the Board in granting OZ relief was self-imposed by the subdivision, thereby warranting a reversal of the Board's determination. Defendants urge that the trial judge's decision was correct, but if it was deficient, we should exercise our original jurisdiction to correct any deficiencies. For the reasons that follow, we vacate the judgment and remand for further findings.

A-3452-17T2

The subdivision approval that the Board granted OZ created two lots from one that was already improved by a commercial building situated on Bergenline Avenue in Union City. The one parcel had been two lots in the past but merged when their ownership became unified many years earlier. Although one parcel, the municipality historically treated the property for tax purposes as two lots, designating them as Lots 45 and 46 in Block 254 on the municipal tax map. The entire parcel was located within the municipality's Commercial Neighborhood (C-N) district, in which residential structures are not permitted.

The subdivision separated the one parcel into Lot 46 fronting Bergenline Avenue, commonly known as 4313-4315 Bergenline Avenue, and Lot 45, the new lot, fronting Lincoln Street and designated as 506 Lincoln Street. Lincoln Street is primarily residential in character and contains several three-family homes. Properties that front Lincoln Street are located in the city's residential (R-1) zone.

The Board approved OZ's subdivision and variance applications at hearings conducted on the same day. OZ's application sought variances from the municipality's Land Use Ordinance that required lots in the C-N zone to be 2500 square feet, one hundred feet in depth, and to have a twenty-foot rear setback and building coverage not to exceed eighty percent. Variances were required for Lot 45 because it was only seventy-two feet deep, contained 1875 square feet, violated the rear setback requirements, and because the proposed home would cover one hundred

percent of the lot. Accordingly, OZ sought relief from the minimum lot area, minimum lot depth, and minimum rear yard requirements.

At the hearing, OZ's counsel explained that the variances OZ sought to construct the three-family home had been approved by the Planning Board in 2007, but at that time, OZ failed to request subdivision approval. An architect, Orestes Valella, testified as to OZ's proposed building plan, including its design and dimensions. Valella noted that the only changes that had been made to the plans that were approved in 2007 related to the side yard dimensions, and that OZ intended to meet the conditions imposed on them at the time of that approval.

Richard Schommer, a licensed professional planner, also testified for OZ. Schommer explained the history of the subdivided lot and that commercial use on Lot 45 would be inappropriate because it fronts a residential street in a residential zone, with similar lots. He stated that there would be no negative impact caused by the variance because the construction of a three-family residence would be consistent with the character of the neighborhood. Regarding the bulk variances, Schommer stated that the lot sizes along Lincoln Street are uniform and that the proposed structure on Lot 45 would be consistent with other properties on the street.

Significantly, Schommer explained that Lot 45's dimensions created a hardship and the application dealt "with certain limitations and hardships with respect to the dimensions of the property, that [OZ] can't overcome [and] are not

created by the applicant." Later during questioning by plaintiff, Schommer addressed the question of whether the hardship he referred to was "self-created," without addressing whether the subdivision itself created the hardship. He stated the following:

> I think because if you look at the dimensions of the total property, in fact, it did exist as two lots previously. They . . . were merged. If you look at the survey, it's actually identified as two separate tracts, with two separate lot numbers, and two different . . . tracts. That's how it . . . did exist at one point in time. I think that's the appropriate configuration for this property. Being L shaped is unusual. You don't see that in the neighborhood. If you look at other properties, they're all rectangular. Subdividing it in the manner proposed is consistent with the other lots along Lincoln Street. It's consistent with other properties along . . . Bergenline. So, I think it actually makes the properties more consistent with the neighborhood, albeit we do need relief because the dimensions of the property don't allow us to have a fully conforming . . . lot.

On February 16, 2017, the Board issued a resolution granting the subdivision approval OZ sought, based on its consideration of Valella's and Schommer's testimonies and its findings that there were no negative criteria associated with the project and the subdivision would not conflict with the character of the neighborhood because the other lots fronting Lincoln Street were similar in size. The Board stated that "special reasons" existed for the requested relief; that the relief could be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan; and that the facts, testimony, and exhibits

reviewed were in accordance with the requirements of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163.

On that same day, the Board issued a second resolution granting the site plan and variance approvals OZ sought. The Board again cited Valella's unrefuted testimony regarding the site plans and found that no negative criteria were associated with the project; the proposed use would be more conforming with the character of the neighborhood; and that OZ was modifying its previously-approved plans to accommodate larger side yards for the westerly neighbor and the egress to the store on the adjacent property. Also, the Board again stated that "special reasons" existed for the requested relief, that such relief could be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan, and that the application satisfied the requirements of the MLUL. Notably, in neither resolution did the Board make any findings as to whether OZ created the hardship it relied upon in support of its application.

On April 4, 2017, plaintiff filed a four-count complaint in lieu of prerogative writs, seeking to set aside the Board's determination. Plaintiff contended in his complaint that the Board's approval of OZ's applications was overall arbitrary, capricious, or unreasonable. Specifically, in count one, plaintiff alleged that the Board's approval of "[t]he subdivision create[d] an undersized [new] lot and render[ed] the existing commercial site nonconforming," which was not permissible.

6

In the second count, he alleged that because "[t]he resulting [new] lot is both undersized and lacks the required lot length [its] development require[d] c(1)[1] hardship variances . . . [b]ut the hardship [was] self-created," warranting the denial of the application for development as a matter of law. In the third count, the complaint alleged that the Board's approval of the required "(d)(1)"[2] use variance was improper because OZ failed to establish "special reasons" and the Board failed to require OZ to demonstrate "an enhanced quality of proof and [make] clear and specific findings to reconcile the proposed use variance with [the] zoning ordinance's omission of the use from those permitted."

At trial, plaintiff argued that the hardship upon which the Board relied was self-created and granting subdivision approval resulted in making Lot 46 a nonconforming lot. Defendants argued that the lots were originally merged in error and that Lot 45 was intended to be a residential property and should have been placed in the R-1 rather than C-N zone. Defendants also explained that Lot 45 could not be developed for commercial purposes because it fronts a residential street. OZ also contended that it demonstrated all of the required proofs through Schommer's testimony. The parties also argued the applicability of various holdings to the issues

---

[1]  N.J.S.A. 40:55D-70(c)(1)

[2]  N.J.S.A. 40:55D-70(d)(1)

before the court, including the Supreme Court's decision in Price v. Himeji, 214 N.J. 263 (2013).

The trial judge issued a six-page written decision on January 19, 2018 explaining his fact findings and conclusions of law in support of his dismissal of plaintiff's complaint with prejudice. After giving a brief recitation of OZ's application, the Board's approval, and the trial court's standard of review, the judge summarized the parties' arguments. In that summary, the judge observed that the parties agreed that under the local zoning ordinances, Lot 45 was nonconforming. He explained OZ maintained that "the newly created lot should have been in the R Zone (residential) and not in the CN Zone [and] there are mitigating factors to offset any violations of the rear yard setbacks [for the new lot]." Turning to plaintiff's allegation that any hardship was self-created, the judge stated the following:

> Plaintiff argues the hardship[s for] which O[Z] seeks the variances for this property are self-created and therefore, under the case law, are not entitled to relief. Plaintiff cites to [Ten Stary Dom P'ship v. Mauro, 216 N.J. 16 (2013)].
>
> OZ, . . . does not directly address the issue of a self-created hardship. The [c]ourt can infer from the record and the submissions, that O[Z] argues there was not self-created-hardship, as a portion of the property did not belong in the CN Zone.

The judge also described plaintiff's final contention about "O[Z] fail[ing] to put forth any positive or negative criteria proofs that would allow for granting of the

within application," and OZ's response to that argument. The judge then stated the issues he was going to address in the remaining approximately one-page of his decision would be "[f]irst, was there enough evidence for [the Board] to grant this application? Second, did [the Board] act in an arbitrary and capricious or unreasonable manner?"

Without specifically identifying any of the evidence testified to by Schommer and considered by the Board, or addressing plaintiff's contention that the hardship OZ relied upon was self-created, the judge explained his findings and conclusions. He stated the following:

> The [c]ourt is convinced there was enough evidence before [the Board] for [it] to grant O[Z]'s application. . . . Schommer submitted testimony establishing the standard and the evidence for [the Board] to grant the bulk variance pursuant to N.J.S.A. 40:55D-70(c)(1). In . . . Schommer's testimony, he opined there was no negative impact to the community, the property on [the new lot] was not suited for the particular zone as [the s]treet is a predominantly residential street and the granting of this application would not be inconsistent with the purpose of the CN Zone. [He] also submitted other testimonial evidence . . . before [the Board], which does not need mentioning here.
>
> The [c]ourt finds there was enough evidence before [the Board] for the granting of this application. . . .
>
> Consequently, [the Board] had enough evidence and determined that evidence was credible, the [c]ourt will not set aside [the Board's] determinations because it would substitute its judgment for a local board that is familiar with the community in which [it] serve[s].

The judge concluded by finding that the Board's decision was not arbitrary, capricious, or unreasonable. This appeal followed.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). A court "may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Himeji, 214 N.J. at 284. We "give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. at 462. A municipal entity's "decision is 'invested with a presumption of validity,'" 62-64 Main St., LLC v. Mayor of City of Hackensack, 221 N.J. 129, 157 (2015) (quoting Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537 (1971)), and "[t]he challenger of municipal action bears the 'heavy burden' of overcoming this presumption . . . ." Vineland Constr. Co. v. Twp. of Pennsauken, 395 N.J. Super. 230, 256 (App. Div. 2007) (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998)). The actions of a zoning board must be based on "substantial evidence." Ibid. As long as the board's actions are "supported by substantial evidence in the record, [we are] bound to affirm that determination." 62-64 Main St., 221 N.J. at 157.

We turn first to the trial judge's written decision. We agree with plaintiff that the trial judge's findings and analysis of the applicable provisions of the MLUL as they related to the Board's decision were inadequate. Other than vague references to the portions of Schommer's general testimony that the trial judge found to be "enough evidence" and "worth mentioning," the judge's terse decision did not satisfy Rule 1:7-4's requirement for a clear articulation of a judge's findings of fact and conclusions of law.

The Rule requires that a judge "by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." R. 1:7-4. "When a trial court issues reasons for its decision, it 'must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). "[A]n articulation of reasons is essential to the fair resolution of a case." O'Brien v. O'Brien, 259 N.J. Super. 402, 407 (App. Div. 1992). "Naked conclusions do not satisfy the purposes of R[ule] 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980). Accord Gnall v. Gnall, 222 N.J. 414, 428 (2015). A judge "does not discharge [his] function simply by recounting the parties'

conflicting assertions and then stating a legal conclusion . . . " Avelino-Catabran, 445 N.J. Super. at 595.

When a judge does not properly state his or her findings and conclusions, a reviewing court does not know whether the judge's decision is based on the facts and law or is the product of arbitrary action resting on an impermissible basis. See Monte, 212 N.J. Super. at 565. "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Giarusso v. Giarusso, 455 N.J. Super. 42, 53-54 (App. Div. 2018) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008)). Failure to do so therefore "constitutes a disservice to the litigants, the attorneys and the appellate court." Ricci v. Ricci, 448 N.J. Super. 546, 575 (App. Div. 2017) (quoting Curtis, 83 N.J. at 569-70).

Not only did the trial judge here not provide sufficient reasoning for his decision as to the matters he addressed, he never addressed issues raised by plaintiff's complaint. For example, he did not address whether the hardship OZ relied upon was self-imposed, which if true, could preclude any entitlement to a variance under N.J.S.A. 40:55D-70(c)(1). See Ketcherick v. Borough of Mountain Lakes Bd. of Adjustment, 256 N.J. Super. 647, 653-56 (App. Div. 1992).

It is beyond cavil that a "(c)(1) variance requires a showing of hardship related to the physical characteristics of the land or the existing structure." Jacoby, 442 N.J. Super. at 470. The hardship "must arise out of the specific condition of the property."

Ibid.  In determining whether a property owner is entitled to a variance under N.J.S.A. 40:55D-70(c)(1), "[i]t is appropriate to consider first the origin of the existing situation.  If the property owner or his predecessors in title created the nonconforming condition, then the hardship may be deemed to be self-imposed." Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 606 (1980); accord Jock v. Zoning Bd. of Adjustment of Twp. of Wall, 184 N.J. 562, 590-91 (2005). See also Branagan v. Schettino, 100 N.J. Super. 580, 587-88 (App. Div. 1968); George F. Barnes Land Corp. v. Bd. of Adjustment of Twp. of Wyckoff, 174 N.J. Super. 301, 303-04 (App. Div. 1980) (addressing self-imposed hardship created by owner's subdivision).  A self-imposed hardship may warrant the denial of the application.  Jacoby, 442 N.J. Super. at 470 (citing Jock, 184 N.J. at 591).  The applicant has the burden of establishing that the hardship was not self-created. Commons, 81 N.J. at 607.

Our review of the record indicates that the Board never addressed the issue of self-created hardship.  As the trial judge observed, OZ never responded to plaintiff's argument that the subdivision created a self-imposed hardship.  And, other than identifying the contention, the trial judge never addressed the issue.  The Board, in failing to address the issue, ignored its obligation to make specific findings of fact and conclusions of law when it grants a variance.  See Medici v. BPR Co., 107 N.J. 1, 23 (1987); Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. Super. 111,

123 (App. Div. 2000).  And, by also remaining silent about the claim in his decision, the judge did not satisfy his obligation under Rule 1:7-4.

The judge similarly did not make any mention of plaintiff's contentions about OZ failing to meet the requirements for a (d)(1) use variance.  See N.J.S.A. 40:55D-70(d)(1); see also Himeji, 214 N.J. at 297-98; Medici, 107 N.J. at 4; Scholastic Bus Co. v. Zoning Bd. of Fair Lawn, 326 N.J. Super. 49, 56 (App. Div. 1999).  The grant of a use variance requires "detailed factual findings" by the Board, which a trial judge must consider in determining if the variance was properly granted.  Himeji, 214 N.J. at 288.  No such analysis occurred here.  In fact, in his legal conclusions, other than a passing reference to one section of the MLUL, the judge did not discuss the applicability of any other statutes or case law, including those argued by the parties.

Under these circumstances, we are constrained to vacate the trial judge's judgment and remand for reconsideration and new findings of fact and conclusions of law.  If the trial judge determines upon further reflection that the Board's findings were deficient, a remand to the Board is a possible solution.

We also are convinced that the trial court should in the first instance make the required findings of fact and conclusions of law.  This is not one of those rare cases in which we should exercise our original jurisdiction under Rule 2:10-5.  Tomaino v. Burman, 364 N.J. Super. 224, 234-35 (App. Div. 2003)) (stating our "original

14                                                                    A-3452-17T2

factfinding authority must be exercised only with great frugality and in none but a clear case free of doubt").

Judgment vacated. The matter is remanded to the trial judge for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3452-17T2